[No. 35278. *En Banc.* October 5, 1959.]

SEATTLE SCHOOL DISTRICT No. 1, *Plaintiff and Relator,* v. HOWARD ODELL *et al., Defendants,* G. CLINTON BENNETT, *Intervenor,* SUPERIOR COURT FOR KING COUNTY, *Frank D. James, Judge, Respondent.*[1]

*Preston, Thorgrimson & Horowitz* and *James R. Ellis, The Attorney General* and *Robert J. Doran, Assistant,* for plaintiff and relator.

*Charles O. Carroll, Kenneth G. Smiles,* and *Maurice M. Epstein,* for defendants Odell *et al.*

*Hall, Cole & Lawrence,* for defendant Buol.

*Cartano, Botzer & Chapman* and *Hugo E. Oswald, Jr.,* for intervenor.

*Merges & Brain, Eugene D. Zelensky, Burcham & Blair, Robert E. Blair,* and *Lewis H. Orland, amici curiae.*

MALLERY, J.—On May 19, 1959, a special school election was held in Seattle School District No. 1 on a proposed tax

[1]Reported in 344 P. (2d) 715.

levy in excess of the forty mill constitutional limitation. A total of 86,154 votes were cast at the election, 76,164 for and 9,990 against the levy.

Seattle School District No. 1 brought this action to validate the election and has appealed from an adverse judgment.

The seventeenth amendment to the state constitution established a forty mill cumulative limitation on tax levy assessments against real and personal property. A specific taxing district may exceed the forty mill limit only if it satisfies the requirements that (1), at the special election held to authorize the excess levy, three-fifths (sixty per cent) of the persons voting on the proposition approve the levy, and that (2) the number of persons voting on the proposition constitute "not less than forty per centum of the total number of votes cast in such taxing district at the *last preceding general election.*" (Italics ours.)

The last *state* election preceding the school district election in May was held on November 4, 1958, when 220,555 votes were cast in the school district. Thus, the election in question polled 2,068 votes less than forty per cent of the vote cast in the preceding November election. If that election is the criterion of sufficiency contemplated by the seventeenth amendment, the levy in question is invalid.

The issue presented by this appeal requires us to determine which election is the "last preceding general election" in relation to the May, 1959, school election. Our answer must accord with the seventeenth amendment which is the supreme law upon the question.

The history of the seventeenth amendment began in 1932, when the electorate of this state approved, by initiative, the first forty mill limit law. Subsequently, similar initiatives were passed in 1934, 1936, and 1938, and in 1940 and 1942 similar referendums were approved. Finally, in November, 1944, the seventeenth amendment was adopted by the voters, fixing the forty mill limit in the constitution.

The criterion for the sufficiency of the number of votes cast at a special-levy election under all of these measures

has always been forty per cent of some specific previous election. The *previous election* referred to by the initiatives and referendums in effect from 1934 through 1940 was the gubernatorial election. The 1942 referendum and the seventeenth amendment provided that the last preceding *general state* or *general election,* respectively, was to provide the test of sufficiency as to the number of votes cast at a special levy.

Thus, the initiatives, referendum, and the seventeenth amendment all referred to the gubernatorial, state or general election as the criterion by which the forty per cent vote requirement was to be determined. The electorate voted for these requirements at seven successive elections.

The intention of the electorate in adopting the seventeenth amendment must, of course, prevail. We think the voters understood the words "last preceding general election," as used in the seventeenth amendment, to mean the state general elections occurring in November of even numbered years.

The school district does not concede that this is conclusive upon the issue, and advances the theory that the legislature, in adopting Laws of 1957, chapter 32, § 1, p. 95 [*cf.* RCW 84.52.052], intended to make the *last preceding school district election* the test by which the sufficiency of the vote for the special levy is to be measured. There were 154,911 votes cast in the preceding school election on March 11, 1958, and the required minimum vote of forty per cent by this standard was therefore attained.

The school district contends that the legislature has the right to establish a different criterion for the sufficiency of the special election if it is more stringent than and in addition to the requirements of the seventeenth amendment. It relies upon *Union High School Dist. No. 1, Skagit Co. v. The Taxpayers of Union High School Dist. No. 1, Skagit Co.,* 26 Wn. (2d) 1, 172 P. (2d) 591, in which we held that the legislature has the power to impose *additional* voting requirements over and above those required by the constitution. It does not follow, however, that every change

of requirements contained in a statute is necessarily more stringent than those of the seventeenth amendment as it must be in order to be valid.

The *last preceding school election,* which the school district contends was the criterion properly adopted by the legislature, is in conflict with the seventeenth amendment for the specific reason that it would on many occasions, as in the instant case, require a smaller vote for validation of a special levy than the forty per cent of the greater vote cast at general elections.

The *last preceding school election* is thus a lessor requirement than that of the seventeenth amendment and is, therefore, invalid.

Our interpretation of the seventeenth amendment to the state constitution requires the affirmance of the judgment of the lower court. It is so ordered.

HILL and OTT, JJ., concur.

FINLEY, J. (concurring in the result)—All should agree that the seventeenth amendment to the state constitution permits the forty mill limit to be exceeded by taxing districts at a special excess tax levy election when, among other things, the number of citizens voting on the proposition is "not less than forty per cent of the total number of votes cast in such taxing district *at* the last preceding general election." (Italics mine.)

However, the majority opinion, in effect, inserts the word "state" in the above constitutional provision as a prefix to the words "general election" contained therein. Thus, the majority concludes that the standard prescribed by the amendment for testing the validity of a special election excess tax levy can only mean or refer to the last preceding *biennial, even-numbered year, November, state general election.* I disagree with the initial operation or premise of the majority, as well as the interpretation or conclusion to which this leads.

The reasoning of the majority in justification of the indicated result is that the initiatives and referendums

adopted from 1934 through 1942 all refer to the biennial, even-numbered year, November, gubernatorial elections; and, consequently, that it must have been the intent of the voters in adopting the seventeenth amendment to do likewise. This reasoning specifically overlooks the fact that no reference to gubernatorial, state, biennial, or even-year elections is made, or contained, in the seventeenth amendment to the constitution. The specific omission or failure to refer to gubernatorial elections seems to me to be significant in exactly the reverse of that envisioned by the majority.

The facts in the instant case show that the biennial, *November, 1958,* general election was the general election *last preceding* the special school district excess tax levy election involved in the instant case. Since the vote cast at the special election was less than forty per cent of that cast in the district at the 1958 November election, the excess tax levy failed. On this basis only, I concur in the result reached in the majority opinion.

WEAVER, C. J., DONWORTH, ROSELLINI, FOSTER, and HUNTER, JJ., concur with FINLEY, J.

WEAVER, C. J. (concurring in the result)—All members of the court agree that the trial court should be affirmed, but for different reasons. This is decisive of the dispute between the parties.

The concurring opinion, signed by six members of the court, represents in fact the views of the majority. We have elected to file the opinion in its present form without having it rewritten because the factual situation requires that it be filed forthwith.