[No. 39166.    En Banc.    December 22, 1966.]

WILLIS A. PLUMMER, *Petitioner*, v. DONALD L. GAINES, *as Judge of the Superior Court for King County, et al., Respondents.*[*]

*John Spiller*, for petitioner.

*Wright, Innis, Simon & Todd,* by *Evan L. Schwab,* amicus curiae.

[*]Reported in 422 P.2d 17.

54

Oтт, J.—Amendment 21 to the Constitution of the State of Washington provides that "Any county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state." The legislative authority (board of county commissioners) of a county may "cause an election to be had" at which not less than 15 nor more than 25 freeholders are to be elected to draft a proposed Home Rule Charter, to be thereafter submitted to the voters of the county for approval or rejection. In the event the county legislative authority does not in its discretion "cause an election to be had," the *registered voters* equal in number to *ten (10) per centum of the voters* of any such county *voting* at the *last preceding general election,* may at any time propose by petition the calling of an election of freeholders." (Italics ours.)

In this case, a petition containing the valid signatures of approximately 28,000 registered voters was submitted to the board of county commissioners of King County. The board of county commissioners deemed that the petition contained the names of sufficient registered voters as required by amendment 21 to the constitution and proceeded to accept applications of freeholders as candidates to be selected by the voters to draft the Home Rule Charter.

Mr. Willis A. Plummer commenced this action in the Superior Court for King County to enjoin the board of county commissioners from proceeding with the freeholder election, contending that the petition did not contain the signatures of 10 per cent of the voters of King County who had voted at the "last preceding general election." From a judgment denying the relief prayed for, Mr. Plummer sought and was granted a review by certiorari of the superior court order in this court.

The facts are not in dispute. The last preceding election held in King County on November 2, 1965, was held pursuant to the provisions of chapter 123 of the Laws of 1965, RCW 29.13.020. 189,987 electors voted. Ten per centum of this number is 18,998. If this was not a general election, the next preceding election was held November 3, 1964, pur-

suant to art. 6, § 8 of the State Constitution, at which 457,190 qualified voters voted. Ten per centum of this number is 45,719.

Did the petition contain the names of "registered voters equal in number to ten (10) per centum of the voters of . . . such county voting at the last preceding general election," as required by Amendment 21? Or, which election—the one held November 2, 1965, or the one held on November 3, 1964—constituted the last preceding general election within the contemplation of Amendment 21?

We conclude that the petition did not contain the requisite number of signatures, because the election held on November 3, 1964, constituted the "last preceding general election" for purposes of Amendment 21.

Const. art 11, § 5, permits the legislature to provide for the election of officers of the several counties by *general* and *uniform* laws. This power, however, is subject to the provisions of Const. art. 6, § 8, which fixes the date when county elections, not otherwise provided for in the constitution, shall be held as "the Tuesday following the first Monday in November" of the *even numbered years*. The constitution fixes no date or year for the conduct of elections in cities, towns, school districts, or other similar political subdivisions, thus leaving discretion in this respect with the legislative body.

Prior to the enactment of Laws of 1965, ch. 123, § 3, RCW 29.13.020, city, town, and district elections in Class A and Class AA counties were held, pursuant to legislative direction, in March of the even numbered years. Laws of 1955, ch. 55, § 1. City, town, and district elections in other than Class A and Class AA counties were held in December of the year called, as legislatively prescribed by Laws of 1927, ch. 279, § 1.

The legislature expressed its purpose in adopting Laws of 1965, ch. 123, § 3, RCW 29.13.020, as follows:

> The purpose of this section is to change the time of holding all general city, town, and district elections to a common election date, throughout the state of Washing-

ton being the first Tuesday following the first Monday in November of the odd-numbered years.

By the enactment of Laws of 1965, ch. 123, § 3, the legislature thus expressed its intention to consolidate the city, town, and district elections from March and December, respectively, to the first Tuesday following the first Monday of November of the odd-numbered years. Clearly, the legislature was not dealing in this section with county elections governed by Const. art. 6, § 8. Instead, it was dealing exclusively with city, town, and district elections not otherwise covered by the constitution.

As provided by the 1965 enactment, the voters of the various affected districts and political subdivisions within King County cast their ballots for the following candidates and issues on November 2, 1965: (1) candidates for the county board of education district No. 4 and district No. 5; (2) candidates for the Seattle school board; (3) candidates for school boards of suburban school districts in Mercer Island, Highline, Renton, Bellevue, North Central, Shoreline, Lake Washington, and North Shore; (4) candidates for Port Commissioner position No. 2 and Port Commissioner position No. 5, Port of Seattle; (5) Seattle school propositions Nos. 1, 2, 3, 4, and 5; and (6) King County propositions Nos. 1 and 2 to exceed the 40 mill limit as provided by the constitution.

Items 1, 4, and 6 were on all the ballots cast within the confines of King County; items 2, 3, and 5 were only on the ballots of the districts to which they pertained. What the situation was with respect to candidates and issues in other similar elections held on November 2, 1965, in the remaining counties of the state is not revealed by the record, and it is not seriously contended that every county in the state had issues or candidates on city, town, or district ballots which permitted or called for all voters within the respective county to cast a ballot.

■■ We are convinced that when the framers of the constitution authorized the state legislature to provide for the election of county officers of the several counties by

*general* and *uniform* laws, and fixed the date when county elections should be held as "the Tuesday following the first Monday in November" of the *even numbered years*, they contemplated that such elections would be contemporaneous and consistent throughout the 39 counties of the state and would call for all voters within the several counties to cast their votes. In short, they contemplated a county-wide vote statewide.

And, we are likewise satisfied that when Amendment 21 was adopted, the framers had in mind the provisions of Const. art. 6, § 8, and art. 11, § 5, and intended an equal and uniform application of the prescribed formula in calling for a Home Rule freeholder election by one or more of the several counties. To carry out this intent, then, the reference to the "last preceding general election" in Amendment 21 must necessarily refer back to the last general election at which some constitutionally recognized county officers were contemporaneously voted upon countywide in every county in the state. Otherwise, the application of the formula would be happenstance rather than uniform.

Furthermore, we believe it was the intention of the framers of the constitution and of Amendment 21 that a substantial number of voters form the basis for the number of signatures required to present a petition for a freeholder election. Traditionally, a larger number of voters cast their ballots at a general election of county officers than at elections in which only municipal and district officers are elected and local issues voted upon.

We, therefore, believe that neither the framers of the constitution nor the legislature, in enacting Laws of 1965, ch. 123, § 3, intended that city, town, and district elections would qualify as the last preceding general election referred to in Amendment 21.

It is argued, however, that the legislature in Laws of 1965, ch. 9, by defining a general election as " 'General election' means an election required to be held on a fixed date recurring at regular intervals," in effect characterized the city, town, and district elections provided for by Laws

of 1965, ch. 123, § 3, as a general election within the purport of Amendment 21.

We do not agree. Laws of 1965, ch. 9, defines the legislative intent as to the meaning of the term "general election" as used in legislative enactments. This the legislature may do, but the legislature may not determine what constitutes a "general election" within the purview of a constitutional provision, for such a determination involves an interpretive process or function which, in the final legal analysis, under our system of government, is reposed in the judicial branch.

The respondent has cited *Seattle School Dist. No. 1 v. Odell*, 54 Wn.2d 728, 344 P.2d 715 (1959), and other cases, contending that these cases support his contention that the election held pursuant to Laws of 1965, ch. 123, § 3, RCW 29.13.020, was a general election. We have reviewed each of the cases relied upon and find that none of them are apropos to the determination of the meaning of the term general election as that term is used in Amendment 21 of the state constitution.

Accordingly, we hold that the election held pursuant to Laws of 1965, ch. 123, § 3, RCW 29.13.020, does not qualify as a general election within the purview of Amendment 21, for the reason that the election did not apply uniformly to all counties in the state and did not provide for the election of any appreciable number of county or state officers.

On October 7, 1966, after the certiorari proceeding was heard on its merits, this court unanimously held that the petition for a freeholder election did not contain sufficient signatures and that "such an election would be contrary to law and constitutional provisions." Because of the urgency presented by the fact that the election was only a month away, the court exercised its extraordinary power, authorized by Const. art. 4, § 4, to issue all writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction and set aside the order of the superior court and enjoined "the said defendant from calling the said election or making any preparation therefor."

A certified copy of this opinion will be filed in the cause in the Superior Court for King County. Since the petitioner prevailed, he will recover his costs in this action.

ROSELLINI, C. J., HILL, FINLEY, WEAVER, HUNTER, HAMILTON, and HALE, JJ., and SOULE, J. Pro Tem., concur.