[No. 41586.   En Banc.   September 24, 1970.]

THE STATE OF WASHINGTON, on the Relation of Charles O. Carroll, Appellant, v. KING COUNTY et al., Respondents and Cross-appellants.*

*Charles O. Carroll, James E. Kennedy, Jeremy R. Randolph,* and *Stephen R. Thomas,* for appellant.

*Short, Cressman & Cable, Kenneth P. Short,* and *John H. Strasburger,* for respondents and cross-appellants.

ROSELLINI, J.—The superior court in this action rendered a declaratory judgment to the effect that a county adopting a home rule charter may not provide for elections in odd-numbered years. It further declared that the King County

*Reported in 474 P.2d 877.

officers whose terms are scheduled to expire in 1972 shall serve until 1973 and that those whose terms are due to expire in 1974, under the terms of the King County Charter, shall serve until 1975. Charles O. Carroll, who instituted the action,[1] appeals from the latter portion of the judgment, contending that the terms must expire in 1970 and 1972. The named defendants appeal from that portion of the judgment which declared the election provisions of the charter unconstitutional. The answer to the question raised on their appeal also disposes of the question raised on the plaintiff's appeal. Consequently, to avoid confusion as to the position of the parties on the question discussed in this opinion, we will refer to the plaintiff herein as the respondent and to the defendants as the appellants.

Does Const. art. 11, § 4 (amendment 21), permit a county adopting a home rule charter to provide for the time of election of county officers? Our answer is that it does.

In 1968 the people of King County adopted such a charter. It provided that elections should be held at the same time as city elections within the county. City elections are held in odd-numbered years. The respondent maintains that Const. art. 6, § 8, dictates the election time for county officers. That section provides:

> The first election of county and district officers not otherwise provided for in this Constitution shall be on the Tuesday next after the first Monday in November 1890, and thereafter all elections for such officers shall be held bi-ennially on the Tuesday next succeeding the first Monday in November.

It is the respondent's contention that the constitution contains no other provision for the time of election of county officers. The appellants, on the other hand, take the position that there are two other provisions, one to be

---

[1] We disregard the words in the title of the case, "State ex rel.," since the state is not in fact a party to the action. Under RCW 7.16.010 and Civil Rule for Superior Court 17, RCW vol. 0, the action should be brought in the name of the real party in interest. *See also State ex rel. Klappsa v. Enumclaw*, 73 Wn.2d 451, n.1, 439 P.2d 246 (1968).

found in Const. art. 11, § 4 and the other in Const. art. 11, § 5. Const. art. 11, § 5, provides, in pertinent part:

> The legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county commissioners, sheriffs, county clerks, treasurers, prosecuting attorneys and other county, township or precinct and district officers, as public convenience may require, and shall prescribe their duties, and fix their terms of office: . . .

This court held in *State ex rel. Hays v. Twichell*, 9 Wash. 530, 38 P. 134 (1894), that Const. art. 6, § 8, is not a restraint upon the right of the legislature to fix the terms of office of county officers, the contention being in that case that article 6 required that such terms be set at 2 years. Since the legislature had set 4-year terms, and elections were to be held in even-numbered years, the court was not faced with a decision on the question whether Const. art. 11, § 5, confers upon the legislature the power to provide for elections of county officers in odd-numbered years, a question which would have been presented had the legislature set the terms at 1, 3, or 5 years.

However, the language which this court used at that early date, 5 years after the adoption of the constitution, we believe makes it clear that the legislature has the power to fix terms of office which would necessitate elections in odd-numbered years. The opinion states:

> The term "fix their term of office" is so clear and unambiguous that it seems to us it is scarcely susceptible of construction, and that the language employed will not warrant the construction that it was simply the date of the commencement and the date of the expiration of the period, nor do we think there is anything in § 8 of art. 6 which would lead to such a construction. That section does not attempt to provide for the duration of the terms of county and district officers, but simply provides a time at which the election for such officers shall be held.

*State ex rel. Hays,* 9 Wash. at 532. *See also State ex rel. Fair v. Hamilton,* 92 Wash. 347, 159 P. 379 (1916).

As we have already observed, because the terms fixed by the legislature in that case were 4-year terms and there

was no provision for holding elections in odd-numbered years, this court was not called upon to decide whether Const. art. 11, § 5, empowers the legislature to provide for such elections and is accordingly the kind of provision the possible existence of which was acknowledged in Const. art. 6, § 8, when the framers used the words "not otherwise provided for in this Constitution." However, we think it must logically follow that if the legislature can fix the terms of office of county officers and no restrictions on that power are set forth in the constitutional provision, it can fix those terms at any number of years which it deems desirable. Thus, it can fix terms which necessitate elections in odd-numbered years. If Const. art. 11, § 5, is to be given its full effect (and there is no reason why it should be considered of any lesser dignity than Const. art. 6, § 8), it permits the legislature to provide for elections in odd-numbered years, and it is a provision of which cognizance is taken and to which deference is made in Const. art. 6, § 8.

■ Const. art. 11, § 5, however, is not the provision under which King County's Home Rule Charter was adopted. Authority for the adoption of that charter is found in Const. art. 11, § 4 (amendment 21), which provides, insofar as it is significant here:

Any county may frame a "Home Rule" charter for its own government subject to the Constitution and laws of this state . . . Such proposed charter shall be submitted to the qualified electors of said county, and if a majority of such qualified electors voting thereon ratify the same, it shall become the charter of said county and shall become the organic law thereof, and supersede any existing charter, including amendments thereto, or any existing form of county government, and all special laws inconsistent with such charter . . .

Any home rule charter proposed as herein provided, may provide for such county officers as may be deemed necessary to carry out and perform all county functions as provided by charter or by general law, and for their compensation, but shall not affect the election of the prosecuting attorney, the county superintendent of schools, the judges of the superior court, and the justices of the peace, or the jurisdiction of the courts.

. . .

> The terms of all elective officers . . . who are in office at the time of the adoption of a Home Rule Charter shall terminate as provided in the charter. . . .
>
> After the adoption of such charter, such county shall continue to have all the rights, powers, privileges and benefits then possessed or thereafter conferred by general law. All the powers, authority and duties granted to and imposed on county officers by general law . . . shall be vested in the legislative authority of the county unless expressly vested in specific officers by the charter. . . .
>
> The provisions of sections 5, 6, 7, and the first sentence of section 8 of this Article as amended shall not apply to counties in which the government has been established by charter adopted under the provisions hereof.

It will be seen that with exceptions not relevant here Const. art. 11, § 5, is made inapplicable, expressly, to counties adopting charters under Const. art. 11, § 4. The respondent's position seems to be that the meaning of this exclusion is that the provisions of Const. art. 11, § 5, cannot be considered in deciding the scope of the authority conferred upon counties adopting home rule charters. We think that, on the contrary, the framers of amendment 21 meant to confer upon counties adopting home rule charters those powers which had theretofore been conferred upon the legislature under Const. art. 11, § 5, including the power to fix the terms of office of county officers, with certain exceptions expressly set forth. It will be observed that the power to frame its own organic law is conferred in broad terms upon the county adopting a charter. While it is not permitted to "affect the election" of the prosecuting attorney, the superintendent of schools, the judges of the superior court and the justices of the peace (all offices in which the state has an interest), there are no restrictions placed upon its right to provide for the election of, prescribe the duties of, and fix the compensation of those officers which it deems necessary to handle its purely local concerns.

There is a further provision that, should the charter receive the affirmative vote of the majority of electors voting thereon, the legislative authority shall immediately call

such special election as may be provided for therein, *if any,* and the county government shall be established *in accordance with the terms of said charter* not more than 6 months after the election at which the charter was adopted. The import of this language is clearly that the voters may adopt such charter provisions as they see fit regarding elections.

The respondent relies heavily upon this court's opinion in *Plummer v. Gaines,* 70 Wn.2d 53, 422 P.2d 17 (1966). That case arose when King County was petitioned to hold an election of freeholders to draft a home rule charter for the county. The court was asked to determine whether the petition contained the requisite number of signatures. We held that the petition must contain the signatures of 10 per cent of the voters who had voted in the last preceding election in which county officers were elected. We also held that Const. art. 6, § 8, was applicable, requiring that such an election be held in an even-numbered year. While some of the language of that opinion is broader than was necessary, our decision here is not out of harmony with that decision. The only provision for the time of election of county officers at that time in King County was the provision contained in Const. art. 6, § 8, the legislature not having made a "provision otherwise" under the authority of Const. art. 11, § 5, and the county not having done so under the authority of Const. art. 11, § 4 (amendment 21). We were not called upon to decide the question presented in this case, and the language used in that opinion relates solely to the issue before the court at that time.

It is significant that *Plummer v. Gaines, supra,* was decided in 1966, and that the King County Home Rule Charter was submitted to the voters in 1968, the commissioners presumably having the advice and counsel of the respondent. At that time, that opinion was not considered as an obstacle to the adoption of such provisions regarding elections of county officers as the framers deemed desirable.

The people of this state, in adopting amendment 21, manifested an intent that they should have the right to conduct their purely local affairs without supervision by the state, so long as they abided by the provisions of the constitution

and did not run counter to considerations of public policy of broad concern, expressed in general laws.

The respondent has suggested no sound reason why the state should have an interest in the dates of elections which concern only the residents of a county. The fact that the Attorney General has not appeared in this case and asserted any interest on behalf of the state strongly suggests that the effect of the county's action upon the state government is minimal. Nor do we find expressed in the constitution any public policy which would require that there be no flexibility in election dates. It was necessary, of course, that in the constitution provision be made for election of officers. The time of election chosen was the earliest convenient time after the adoption of the constitution. But at the same time the framers provided that the legislature should fix the terms of office of county officers. In so providing, they implicitly gave approval of the exercise of legislative discretion in fixing election dates. In amendment 21 to Const. art. 11, § 4, the people again manifested an intent to permit themselves flexibility when they gave plenary power, in local matters, to counties adopting home rule charters.

The judgment of the trial court, holding the charter unconstitutional, is reversed and the action is dismissed.

HUNTER, C. J., FINLEY, HAMILTON, HALE, NEILL, STAFFORD, and SHARP, JJ., concur.

HILL, J. Pro Tem., concurs in the result.