[No. 44183. En Banc. September 2, 1976.]

ROBERT E. BROWNLEE, ET AL, *Appellants*, v. ROBERT J. CLARK, ET AL, *Respondents*.

479

*William V. Vetter,* for appellants.

*Craig A. Ritchie, Prosecuting Attorney,* for respondents.

BRACHTENBACH, J.—Appellants (hereinafter referred to as petitioners) sought a writ of prohibition requiring respondents to refrain from all further actions, proceedings, and expenditures relating to the preparation and drafting of a "home rule" charter for Clallam County. Petitioners contend that the provisions of Const. art. 11, § 4 (amendment 21), hereafter Amendment 21, which grant the voters of Washington counties the power to adopt a "home rule" charter, were not complied with. The trial court found no violation of Amendment 21 and therefore denied the writ. We affirm.

Amendment 21 provides that "Any county may frame a 'Home Rule' charter for its own government subject to the Constitution and laws of this state . . ." The legislative authority of the county may cause an election to be held at which a board of freeholders is elected to draft a proposed home rule charter, to be thereafter submitted to the voters of the county for approval or rejection. In the event the legislative authority of the county does not in its discretion cause an election to be had, the

> registered voters equal in number to ten (10) per centum of the voters of any such county voting at the last preceding general election, may at any time propose by petition the calling of an election of freeholders. The petition shall be filed with the county auditor of the county at least three (3) months before any general election and the proposal that a board of freeholders be elected for the purpose of framing a county charter shall be submitted to the vote of the people at said general election, and at the same election a board of freeholders of not less than fifteen (15) or more than twenty-five (25), as fixed in the petition calling for the election, shall be chosen to draft the new charter. The procedure for the nomination of qualified electors as candidates for said board of freeholders shall be prescribed by the legislative authority of

the county, and the procedure for the framing of the charter and the submission of the charter as framed shall be the same as in the case of a board of freeholders chosen at an election initiated by the legislative authority of the county.

Const. art. 11, § 4 (amendment 21).

On August 4, 1975, a petition was filed in Clallam County pursuant to the requirements of Amendment 21 calling for the election of a board of freeholders at the next general election for the purpose of framing a "home rule" charter for Clallam County. This measure was presented to the voters of the county on November 4, 1975. At issue was the question of whether a board of freeholders should be elected to frame a county charter, and the election of a board of 15 freeholders. Of those persons voting on the issue of whether or not a board of freeholders should be elected, a majority voted affirmatively that such a board should be elected. In response to the voter approval of the proposal to form a board of freeholders, the 15 freeholders elected have commenced meetings, elected officers, and expended funds for the purpose of formulating a county charter.

Petitioners contend that election and commencement of activity by this board of freeholders were not properly authorized by the voters of Clallam County. Two issues are raised by petitioners: (1) whether the election held on November 4, 1975, was a "general election" within the meaning of Amendment 21; and (2) whether Amendment 21 requires a majority of the voters actually voting on the freeholder measure or an absolute majority of all those persons voting at the general election to approve the proposition proposing the formation of a board of freeholders.

[1] Petitioners argue that for purposes of Amendment 21, a general election is one held on the first Tuesday following the first Monday in November of each *even-numbered* year. Petitioners rely on *Plummer v. Gaines*, 70 Wn.2d 53, 422 P.2d 17 (1966), to support their position. Petitioners' reliance is misplaced. *Plummer v. Gaines*,

*supra,* is strictly limited to its facts. *State ex rel. Carroll v. King County,* 78 Wn.2d 452, 457, 474 P.2d 877 (1970). *Plummer v. Gaines, supra,* does not stand for the proposition that a general election, as the term is used in Amendment 21, cannot be held in odd-numbered years, but rather that the legislature cannot make a strictly local election a general election by calling it a general election.

In *Plummer v. Gaines, supra,* the court was asked to determine the meaning of the phrase the "last preceding general election" as it is used in that portion of Amendment 21 dealing with the number of signatures required to initiate by petition a freeholders election. The facts in *Plummer* were not in dispute. The last preceding election in King County was in November 1965, and was held pursuant to RCW 29.13.020 (city, town, and district general elections). Six items were on the ballot. Two of the items were school district matters, one a port district matter, another a county board of education matter, and two were county propositions requesting authority to exceed the 40-mill limit. Only 189,987 electors voted in the entire county. If this was not a general election, the next preceding election was held in November 1964, pursuant to Const. art. 6, § 8, at which time county officers, state officers, and federal officers were elected. In this election, 457,190 qualified voters voted.

In deciding *Plummer v. Gaines, supra,* the court concluded that when Amendment 21 specified that a qualifying number of signatures on the petition would refer to a general election, it referred to an election of general interest and general application throughout the state. The local election held in King County in 1965 obviously was not an election of general interest and general application throughout the state.

In contrast to the situation in *Plummer,* the November 1975 election was an election that commanded considerable attention. There were a number of statewide issues attracting wide attention, among them being the race for Secretary of State, the referendum on the death penalty,

and the vote on the judicial article. In addition to numerous local issues there were several issues of countywide interest in Clallam County. It was, in fact, a general election. *Daly v. Chapman*, 85 Wn.2d 780, 781, 539 P.2d 831 (1975).

The construction of the meaning of a constitutional provision and the effect it is to be given is a matter exclusively for this court to determine. *Tacoma v. O'Brien*, 85 Wn.2d 266, 271, 534 P.2d 114 (1975); *Plummer v. Gaines, supra.* We conclude, based upon the facts presented in this case, that this election satisfies the requirement of Amendment 21 which directs that the issue be put "to the vote of the people at said general election."

The question that remains is whether Amendment 21 requires more than a majority vote of the persons actually voting on the measure proposing the formation of a board of freeholders to approve the proposition. While a majority of the persons voting on the issue of whether or not a board of freeholders should be elected voted affirmatively that a board should be elected, not all persons voting in the election voted on this proposition. Of the total persons voting in the election, less than a majority voted in favor of establishment of a board of freeholders. It is petitioners' contention that Amendment 21 requires a majority of the total persons voting in the election in order to establish a board of freeholders.

The crucial language in Amendment 21 provides that "the proposal that a board of freeholders be elected for the purpose of framing a county charter *shall be submitted to the vote of the people at said general election.*" (Italics ours.) Such language requires only that there be a majority vote of actual votes cast upon the particular proposition. *See Fox v. Seattle*, 43 Wash. 74, 86 P. 379 (1906); *State ex rel. Short v. Clausen*, 72 Wash. 409, 130 P. 479 (1913). *See generally Election-Majority on Special Proposition*, Annot., 131 A.L.R. 1382 (1941).

[W]here the constitution prescribes the majority required to carry a particular proposition submitted to the

electors, it is a majority of those who vote upon that proposition. . . . *Against this it may be said that, in each of the instances mentioned, the majority required is only a majority of those voting on the question submitted; but when we observe that in all these cases the questions are to be submitted at general elections, where the whole number of votes cast may far exceed those cast for and against the particular proposition, the general policy of the constitution becomes clear in no case to require an absolute majority of all those who vote at a general election to carry a special proposition, but only a majority of those who see fit to express themselves upon the proposition; . . .*

*Metcalfe v. Seattle*, 1 Wash. 297, 301-02, 25 P. 1010 (1890). Unless specific language appears to the contrary, those persons who abstain from voting on a particular proposition are presumed to have acquiesced in the result reached by the majority. *Strain v. Young*, 25 Wash. 578, 66 P. 64 (1901).

The judgment is affirmed.

STAFFORD, C.J., ROSELLINI, HUNTER, HAMILTON, UTTER, HOROWITZ, and DOLLIVER, JJ., and HALE, J. Pro Tem., concur.