[Nos. 45068, 45093. En Banc. September 14, 1977.]

THOMAS H. FAIN, *Petitioner,* v. BRUCE K. CHAPMAN, *as Secretary of State, Respondent.*

THE STATE OF WASHINGTON, *on the Relation of Jay Nuxoll, Appellant,* v. CLINT G. ELSOM, ET AL, *Respondents.*

*Williams, Lanza, Kastner & Gibbs,* by *Joseph J. Lanza* and *Thomas H. Fain,* for petitioner.

*Jay Nuxoll,* pro se.

*Christopher T. Bayley, Prosecuting Attorney, Raymond Ferguson, Deputy, Slade Gorton, Attorney General,* and *Malachy R. Murphy, Deputy,* for respondents.

*Daniel F. Sullivan* on behalf of Washington State Trial Lawyers Association, amicus curiae.

UTTER, J.—These consolidated cases arise from the passage of Laws of 1977, 1st Ex. Sess., ch. 311, creating ten new superior court judgeships, nine of which are to become effective on November 1, 1977, and one effective January 1, 1978. On July 20, 1977, the respondent Secretary of State, as chief election officer of the state of Washington, directed his office and appropriate county election officials to accept filings during the week of July 25–29, 1977, for the positions to be created as of November 1. It was respondent's intention to hold primary elections with regard to each of these positions on September 20, 1977, and to hold those general elections which might be required at the regularly scheduled general election on November 8, 1977.

Petitioner Thomas Fain, a citizen and taxpayer of the state of Washington who is entitled to vote in elections for state officers, commenced an original action in this court on August 10, 1977, challenging the validity of this election procedure. Fain v. Chapman, cause No. 45068. This suit, as

an action against a state officer, is in the nature of prohibition and seeks relief by way of an order declaring that the judicial offices created by Laws of 1977, 1st Ex. Sess., ch. 311 are not subject to the primary and general elections to be held in September and November 1977 and an order restraining the respondent Secretary from conducting the scheduled elections.

In State ex rel. Nuxoll v. Elsom, cause No. 45093, the appellant, Jay Nuxoll, also a taxpayer and citizen of the state of Washington, commenced an action in King County Superior Court challenging the validity of the proposed election procedure. He sought relief by way of a writ of prohibition or an alternative writ of mandamus against the respondent Secretary and the respondent Clint G. Elsom, in his capacity as manager of the Division of Records and Elections for King County. The Superior Court denied both writs and appellant sought relief by direct appeal to this court.

The two cases were consolidated and set for accelerated hearing before this court, sitting en banc, on September 8, 1977. In view of the urgency of the issues raised, the court entered an order the same day, unanimously concluding that the judicial offices created by Laws of 1977, 1st Ex. Sess., ch. 311 are not subject to election in 1977 and ordering that no election for such offices be held. This opinion sets forth the court's reasons for its order.

The provisions of article 4, section 5 of the constitution provide the framework within which newly created judgeships must be filled. The applicable provision provides:

> If a vacancy occurs in the office of judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election . . .

Const. art. 4, § 5. The respondent Secretary of State, relying upon an opinion issued by the Attorney General (Attorney General Opinion, July 27, 1977), concluded that this provision must be applied literally and directed that

filings be accepted in July and a primary election held in September, both prior to the effective date of the statute creating these positions, in order to facilitate the November election he felt mandated by the constitution. Petitioner and appellant have contended that this constitutional provision cannot be interpreted literally. They argue it must be understood to require election of judges to fill these positions at the next general election, which can be held in compliance with state statutes governing the time and manner of holding elections, following the existence of a vacancy. We hold petitioner and appellant have correctly interpreted the constitution and that the statute relied upon by them is constitutional. That statute precludes the holding of any elections with regard to these judgeships in 1977.

██ The first issue is at what point a "vacancy", as that term is utilized in the constitution, will occur in each of these newly created positions. Petitioner contends no "vacancy" will exist in the positions here at issue until the act creating them becomes effective. We agree. A statute speaks from its effective date and no action may be undertaken pursuant to it prior to that time. *Yelle v. Kramer,* 83 Wn.2d 464, 520 P.2d 927 (1974); *Walker v. Lanning,* 74 Wash. 253, 133 P. 462 (1913). In *State ex rel. New Washington Oyster Co. v. Meakim,* 34 Wn.2d 131, 140, 208 P.2d 628 (1949), a case concerning the powers of a retired superior court judge, this court quoted with approval the following language:

> "The word 'vacancy,' as applied to an office, has no technical meaning. An *existing* office without an incumbent is vacant. There is no basis for the distinction that it applies only to an office vacated by death, resignation, or otherwise.

(Italics ours.) These decisions indicate there can be no "vacancy" in these soon–to–be–created positions until such time as the statute which gives them life becomes effective. The nine superior court judgeships here at issue will thus become vacant, for purposes of Const. art. 4, § 5, on

November 1, 1977. *See* Laws of 1977, 1st Ex. Sess., ch. 311, § 6.[1]

All parties to this action agree that the "next succeeding general election" following the date at which these vacancies will arise is scheduled to take place November 8, 1977. *See* RCW 29.13.010; *Brownlee v. Clark,* 87 Wn.2d 478, 553 P.2d 1344 (1976). They argue, however, that an election may not be held for these positions at that election because of a provision of RCW 29.21.380(3), which provides:

A scheduled election shall be lapsed, the office deemed stricken from the ballot, no purported write–in votes counted, and no candidate certified as elected, when:

. . .

(3) In other elections for nonpartisan office a void in candidacy occurs *or a vacancy* occurs involving an unexpired term to be filled on or after the fourth Tuesday prior to an election.

(Italics ours.) If this statute is valid, it clearly would allow those persons appointed by the Governor when these vacancies occur to serve until the next general election which can be held in compliance with its provisions. That election will take place in November 1978. The history of the bill creating these positions makes it clear that the legislature chose the November 1 effective date with the assumption that RCW 29.21.380(3) would require such a result. *See* Fain v. Chapman, cause No. 45068, agreed statement of facts, exhibit C, p. 22–23. The Secretary of State insists that elections in November 1977 are a constitutional necessity, however, which may not be avoided through reliance upon this statute. Such an argument must rest upon the presumption that the pertinent section of RCW 29.21.380(3) is unconstitutional on the basis that it is

---

[1]We note that the provisions of RCW 2.08.069 are consistent with this analysis; however, it should be made clear that we do not rely upon the statute in reaching our conclusion. The interpretation of words utilized in the constitution is, of course, the duty of the courts and not the legislature. *Plummer v. Gaines,* 70 Wn.2d 53, 422 P.2d 17 (1966); *State Highway Comm'n v. Pacific Northwest Bell Tel. Co.,* 59 Wn.2d 216, 367 P.2d 605 (1961).

beyond the power of the legislature to enact such a provision.

 The state constitution must be treated as a limitation upon the general legislative power rather than a grant of specific powers to that branch of government. The legislature possesses all general legislative power not specifically or by fair inference precluded by the constitution. *State ex rel. Distilled Spirits Institute, Inc. v. Kinnear,* 80 Wn.2d 175, 492 P.2d 1012 (1972); *Hoppe v. State,* 78 Wn.2d 164, 469 P.2d 909 (1970); *Yelle v. Bishop,* 55 Wn.2d 286, 347 P.2d 1081 (1959); *Walker v. Spokane,* 62 Wash. 312, 113 P. 775 (1911). Consistent with this fundamental proposition of constitutional law, this court has previously held that the legislature possesses the power to enact specific laws concerning the election of judges and the time and manner of filling vacancies in such positions, when they arise, so long as those laws do not conflict with a specific restriction upon the legislative power found in the constitution itself.

Our decision in *State ex rel. Sampson v. Superior Court,* 71 Wash. 484, 128 Pac. 1054, Ann. Cas. 1914C 591, we think, renders it plain that the constitutional provision is not self–executing. It is for the legislature, and not the courts, to provide the notice for and the method of conducting elections, general or special. The *only express limitation* we see in the constitution *is that such an election,* as is here drawn in question, shall *be held at the time of the general election.* It is plain, we think, that some notice must be given, and we think it equally plain that it is for the legislature to prescribe the time and manner of giving such notice.

(Italics ours.) *State ex rel. Ferguson v. Superior Court,* 140 Wash. 636, 648, 250 P. 66 (1926). *See State ex rel. Rummens v. Superior Court,* 160 Wash. 520, 524–26, 295 P. 730 (1931).

It is contended by respondents that if RCW 29.21.380(3) is applied not only to unanticipated vacancies occurring through resignation or death of an officeholder, but also to "anticipated" vacancies, such as are here at issue, it will

54

violate the fundamental constitutional preference for election of judges by the people (*see* Const. art. 4, § 5) and violate restrictions placed upon the legislature by the forty–first amendment to the state constitution.[2] We cannot agree. There is nothing in the cited provisions of the constitution restricting the power of the legislature to enact a statute such as this. Nothing in article 4, section 5 of the constitution suggests that vacancies which may be anticipated must be treated in any other manner than vacancies which are unanticipated. We have previously held that "[t]here is no basis for the distinction that it [the word 'vacancy'] applies only to an office vacated by death, resignation, or otherwise." *State ex rel. New Washington Oyster Co. v. Meakim, supra* at 140.

▉ Contrary to the assertions of the respondents, the forty–first amendment does not impose such a restriction. That amendment concerns avoiding the necessity for a primary or general election in instances in which only a single candidate exists and no write–in campaign is contemplated and also invites the legislature to enact laws governing instances in which such a sole candidate dies prior to the

---

[2]Const. art. 4, § 29 (amendment 41) reads as follows:

"Notwithstanding any provision of this Constitution to the contrary, if, after the last day as provided by law for the withdrawal of declarations of candidacy has expired, only one candidate has filed for any single position of superior court judge in any county containing a population of one hundred thousand or more, no primary or election shall be held as to such position, and a certificate of election shall be issued to such candidate. If, after any contested primary for superior court judge in any county, only one candidate is entitled to have his name printed on the general election ballot for any single position, no election shall be held as to such position, and a certificate of election shall be issued to such candidate: *Provided,* That in the event that there is filed with the county auditor within ten days after the date of the primary, a petition indicating that a write in campaign will be conducted for such single position and signed by one hundred registered voters qualified to vote with respect of the office, then such single position shall be subject to the general election. Provisions for the contingency of the death or disqualification of a sole candidate between the last date for withdrawal and the time when the election would be held but for the provisions of this section, and such other provisions as may be deemed necessary to implement the provisions of this section, may be enacted by the legislature."

time an election would be held. It is irrelevant to the factual situation before us.

The principal case authority relied upon by the respondents, *Spector v. Glisson,* 305 So. 2d 777 (Fla. 1974), is also inapplicable. *Spector* involves a resignation tendered by a Supreme Court judge which was irrevocable by its terms and was intended to take effect at a date subsequent to the time of the next succeeding election, but prior to the time the judge would reach mandatory retirement age. Candidates attempted to file to run for this "anticipated vacancy" at the next succeeding election. The filings were refused on the ground that no vacancy in the office presently existed and prospective candidates instituted a successful mandamus action to compel an election. The Florida court interpreted that state's constitution as requiring an election for vacant offices whenever possible and interpreted "vacancy" to include a situation in which a prospective irrevocable revocation from an existing office had been tendered. The rationale and holding of *Spector* is attractive in the abstract; however, we conclude the case is inapplicable here. There is no suggestion made in the *Spector* decision that to hold an election would have been in conflict with the express provisions of any statute governing the time and manner of holding elections.

We recognize, as the court did in *Spector,* that the provision for election of judges set forth in our constitution is the "prime and basic provision and precept" of that article and that the provision for filling vacancies is "subordinate and supplementary thereto." *Spector v. Glisson, supra* at 781. It is, however, essential to the voting process that elections be scheduled and held in a manner which is both predictable and orderly. This is especially true where arrangements must be made to fill unexpired terms in elective offices. It is both logical and necessary that the legislature provide this order and predictability through the enactment of election laws which set forth specific requirements for filing, notice of elections, etc. Our statutory

scheme does provide for special filing and election procedures to be utilized in instances where a vacancy, whether "anticipated" or "unanticipated", occurs more than 4 weeks prior to a scheduled election, RCW 29.21.370, but precludes efforts to initiate the election process upon shorter notice. RCW 29.21.380(3). These two statutes, though of necessity somewhat arbitrary in establishing the time in which the election process may be commenced, are reasonably calculated to assure an orderly voting process by an informed electorate and must be respected. If some distinction is to be made between anticipated and unanticipated vacancies by our election laws, that is for the legislature to decide, for the constitution does not require it. Of course, the legislature may not, through the promulgation of election laws, attempt to define words used in the constitution or alter its express terms—the former is the duty of the courts and the latter the right of the people.

We find RCW 29.21.380(3) to be both constitutional and controlling. Consistent with our previous order, petitioner in Fain v. Chapman is entitled to the relief requested and the decision of the Superior Court in State ex rel. Nuxoll v. Elsom, insofar as it upheld the validity of the scheduled elections, is reversed.[3] The scheduled elections may not take place and the certification previously executed as to the sole candidate for the office of Superior Court Judge for Spokane County, Department No. 9, is void. The Governor shall appoint individuals to fill the vacancies to be created by Laws of 1977, 1st Ex. Sess., ch. 311 as they arise. The

---

[3]Because we conclude RCW 29.21.380(3) is controlling, we need not reach the other issues advanced by the parties.

positions will then be filled by election at the regularly scheduled general election in 1978.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.