[No. 43879.  En Banc.  May 26, 1977.]

WASHINGTON ASSOCIATION OF APARTMENT ASSOCIATIONS, INC., ET AL, *Respondents*, v. DANIEL J. EVANS, *as Governor*, ET AL, *Appellants*.

*Slade Gorton, Attorney General, Malachy R. Murphy, Deputy,* and *Wayne L. Williams* and *Carol A. Smith, Assistants,* for appellants.

*Merges, Youngberg, Goucher, Allen, Larson & Brain, Edwards E. Merges, Nicolai, Sorrel, Binns & Beck,* and *Max R. Nicolai,* for respondents.

WRIGHT, C.J.—The problem presented in this litigation is the validity of the Governor's 14 attempted item and section vetoes to Engrossed Substitute Senate Bill No. 2226. This bill ultimately became Laws of 1973, 1st Ex. Sess., ch. 207 (codified in RCW 59.18), and is commonly known as the landlord–tenant act of 1973.

The Governor exercised his veto power by attempting to excise parts of sections 6, 7, 8, 11, 19, 23, 24, 25, and 31 and

all of sections 43 and 47. At the time of these vetoes, Const. art. 3, § 12 provided in pertinent part:

If any bill presented to the governor contain several sections or items, he may object to one or more sections or items while approving other portions of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the section, or sections; item or items to which he objects and the reasons therefor, and the section or sections, item or items so objected to, shall not take effect unless passed over the governor's objection, as hereinbefore provided.

Since then, Amendment 62 has been passed which alters the Governor's item veto power. However, we are concerned only with the constitutional provision as it existed in 1973.

Each veto must necessarily be considered separately. A few general principles should be stated at the outset, however.

The Governor when exercising the veto power is acting in a legislative rather than in an executive capacity. He is, in effect, a part of the legislature. *Gottstein v. Lister,* 88 Wash. 462, 153 P. 595 (1915); *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P.2d 91 (1933); *Lynch v. Department of Labor & Indus.,* 19 Wn.2d 802, 145 P.2d 265 (1944); *Shelton Hotel Co. v. Bates,* 4 Wn.2d 498, 104 P.2d 478 (1940).

In order for a veto to be valid, it must pass two tests. Each of these tests is independent of the other, and if an attempted veto fails either test, it is invalid. First, the excised portion of a bill must constitute an item or section within the meaning of Const. art. 3, § 12. Moreover, what constitutes a valid item or section is a question of law for the court to decide, and does not depend upon the legislature's arrangement of the subject matter by arbitrary divisions of a bill into items or sections. *Cascade Tel. Co. v. State Tax Comm'n,* 176 Wash. 616, 30 P.2d 976 (1943). Second, the veto power may be exercised only in a negative way, and not in an affirmative way. That is to say, the Governor may use the veto power to prevent some act or

part of an act of the legislature from becoming law. Likewise, the Governor may not use the veto power to reach a *new* or different result from what the legislature intended. *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 P. 316 (1910). In other words, the veto power must be exercised in a destructive and not a creative manner.

■ An examination of the vetoed portions of the act will be necessary in order to determine if each of the vetoes is in fact valid. Engrossed Substitute Senate Bill No. 2226, section 6, states:

> The landlord will at all times during the tenancy keep the premises fit for human habitation, and shall in particular:
> (1) Maintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented *if such condition substantially endangers or impairs the health or safety of the tenant;*
>
> . . .
>
> (4) Provide a reasonable program for the control of infestation by insects, rodents, and other pests at the initiation of the tenancy and, *except in the case of a single family residence,* control infestation during tenancy except where such infestation is caused by the tenant;

(Italics indicate vetoed sections.)

With regard to the portion of subsection (1), the attempted veto substantially altered the scope of the section. The effect of the subsection was increased to include *all* violations of code, statute, ordinance or regulation. As passed by the legislature the subsection applied only to violations "if such condition substantially endangers or impairs the health or safety of the tenant". The attempted veto, therefore, had an affirmative effect.

With regard to the portion of subsection (4), the effect of the attempted veto would be to extend the act to apply to single family residences which were not included in the act as passed. That again attempted an affirmative result.

Section 7 of the act states:

If at any time during the tenancy the landlord fails to carry out the duties required by section 6 of this 1973 amendatory act, the tenant may, in addition to pursuit of remedies otherwise provided him by law, deliver written notice to the person designated in subsection (11) of section 6 of this 1973 amendatory act, or to the person who collects the rent, which notice shall specify the premises involved, the name of the owner, if known, and the nature of the defective condition. For the purposes of this chapter, a reasonable time for the landlord to commence remedial action after receipt of such notice by the tenant shall be, except where circumstances are beyond the landlord's control;

(1) Not more than twenty–four hours, where the defective condition deprives the tenant of water or heat or is imminently hazardous to life;

(2) Not more than forty–eight hours, where the landlord fails to provide hot water or electricity;

(3) Subject to the provisions of subsections (1) and (2) of this section, not more than seven days in the case of a repair under section 10 (3) of this 1973 amendatory act;

(4) Not more than thirty days in all other cases.

In each instance the burden shall be on the landlord to see that remedial work under this section is completed with reasonable promptness.

*Where circumstances beyond the landlord's control, including the availability of financing, prevent him from complying with the time limitations set forth in this section, he shall endeavor to remedy the defective condition with all reasonable speed.*

(Italics indicate vetoed section.)

Again, the portion attempted to be vetoed was a limitation or restriction upon the effectiveness of the act. Therefore, if that portion were vetoed the effect of the act is increased by removing an excuse for timely compliance which otherwise would be available to the landlord. That produces an affirmative result.

Section 8 of the act states in part:

The tenant shall be current in the payment of rent *including all utilities which the tenant has agreed in the rental agreement to pay* before exercising any of the

remedies accorded him under the provisions of this chapter:

(Italics indicate vetoed section.)

This attempted veto extends the effect of the act. If the tenant is required to pay all utilities which he has agreed to pay before exercising certain remedies that is a restriction upon the right to use certain remedies. The attempted veto removes that restriction and, therefore, extends the effect of the act, and is affirmative in character.

Section 11(1) of the act states in part:

The court or arbitrator may also authorize the tenant to make or contract to make further corrective repairs: PROVIDED, That the court specifies a time period in which the landlord may make such repairs before the tenant may commence or contract for such repairs: *PROVIDED FURTHER, That such repairs shall not exceed the sum expressed in dollars representing one month's rental of the tenant's unit in any one calendar year.*

(Italics indicate vetoed section.)

The portion which was the subject of the attempted veto in section 11(1) was a limitation upon the right of the tenant to contract for repairs at the expense of the landlord, which limited such right to not more than an amount equal to 1 month's rent in any year. The removal of that limitation was obviously an extension of the act and, therefore, affirmative.

Section 19 reads in part:

Whenever the landlord learns of a breach of section 13 of this 1973 amendatory act *or has accepted performance by the tenant which is at variance with the terms of the rental agreement or rules enforceable after the commencement of the tenancy,* he may immediately give notice to the tenant to remedy the nonconformance. Said notice shall expire after sixty days unless the landlord pursues any remedy under this act.

(Italics indicate vetoed section.)

This section as passed by the legislature gives to the landlord the right to require the tenant to remedy nonconformance with (a) section 13 of the act, or (b) the terms of

the rental agreement, or (c) rules enforceable after the commencement of the tenancy. This all related to a single subject, the right of the landlord to require performance. It is not severable and is, therefore, not a proper item. The attempted veto must fail for that reason.

Section 23(4) of the act states in part:

The common law right of the landlord of distress for rent is hereby abolished for property covered by this chapter. Any provision in a rental agreement creating a lien upon the personal property of the tenant or authorizing a distress for rent is null and void and of no force and effect. Any landlord who takes or detains the personal property of a tenant *without the specific consent of the tenant to such incident of taking or detention,* unless the property has been abandoned as described in section 31 of this 1973 amendatory act, *and who, after written demand by the tenant for the return of his personal property, refuses or neglects to return the same promptly* shall be liable to the tenant for the value of the property retained, and the prevailing party may recover his costs of suit and a reasonable attorney's fee.

(Italics indicate vetoed sections.)

Both of the attempted vetoes extend the effect of the act. The first makes the landlord liable for taking or detaining personal property even if the tenant specifically consents to the same; a definite extension of the liability imposed by the act as it was passed by the legislature. The second attempted veto sought to remove from the tenant the duty to make a written demand for the return of his property, likewise a definite extension of the liability of the landlord. Both of the attempted vetoes are, therefore, affirmative in scope and effect.

Section 24 states as follows:

So long as the tenant is in compliance with this chapter, the landlord shall not take or threaten to take reprisals or retaliatory action against the tenant because of any good faith and lawful:

(1) Complaints or reports by the tenant to a governmental authority concerning the failure of the landlord to substantially comply with any code, statute, ordinance, or

regulation governing the maintenance or operation of the premises, *if such condition may endanger or impair the health or safety of the tenant;*

(2) Assertions or enforcement by the tenant of his rights and remedies under this chapter.

"Reprisal or retaliatory action" shall mean and include but not be limited to any of the following actions by the landlord when such actions are intended primarily to retaliate against a tenant because of the tenant's good faith and lawful act:

(1) Eviction of the tenant *other than giving a notice to terminate tenancy as provided in section 20 of this 1973 amendatory act;*

(2) Increasing the rent required of the tenant;

(3) Reduction of services to the tenant;

(4) Increasing the obligations of the tenant.

(Italics indicate vetoed sections.)

The first of the attempted vetoes in section 24 is identical with the attempted veto in section 6(1) and the same reasons demonstrate that it is affirmative in character. The second attempted veto in the section expands the scope of the act in that it attempts to cause the act to apply to all evictions. However, the act as passed by the legislature applied to a more limited class, namely evictions excluding those provided in section 20 of the act. The Governor attempted to legislate affirmatively by use of the veto and that is not permissible.

Section 25 of the act states in part:

Initiation by the landlord of any action listed in section 24 of this 1973 amendatory act within ninety days after a good faith and lawful act by the tenant as enumerated in section 24 of this 1973 amendatory act, or within ninety days after any inspection or proceeding of a governmental agency resulting from such act, shall create a rebuttable presumption affecting the burden of proof, that the action is a reprisal or retaliatory action against the tenant: PROVIDED, *That if the court finds that the tenant made a complaint or report to a governmental authority within ninety days after notice of a proposed increase in rent or other action in good faith by the landlord, there is a rebuttable presumption that the*

*complaint or report was not made in good faith: PRO-VIDED FURTHER,* That no presumption against the landlord shall arise under this section, with respect to an increase in rent, if the landlord, in a notice to the tenant of increase in rent, specifies reasonable grounds for said increase, which grounds may include a substantial increase in market value due to remedial action under this chapter: PROVIDED FURTHER, That the presumption of retaliation, with respect to an eviction, may be rebutted by evidence that it is not practical to make necessary repairs while the tenant remains in occupancy. In any action or eviction proceeding where the tenant prevails upon his claim or defense that the landlord has violated this section, the tenant shall be entitled to recover his costs of suit or arbitration, including a reasonable attorney's fee, and where the landlord prevails upon his claim he shall be entitled to recover his costs of suit or arbitration, including a reasonable attorney's fee: PROVIDED FURTHER, That neither party may recover attorney's fees to the extent that their legal services are provided at no cost to them.

(Italics indicate vetoed section.)

The portion attempted to be vetoed relates to the burden of proof. If the attempted veto were to be valid the burden of proof upon the landlord would be increased and thus the effect would be affirmative.

Section 31(2) states:

(2) When the tenancy is for a term greater than month–to–month, the tenant shall be liable for the lesser of the following:

(a) The entire rent due for the remainder of the term; or

(b) All rent accrued during the period reasonably necessary to rerent the premises at a fair rental, plus the difference between such fair rental and the rent agreed to in the prior agreement, *plus actual costs incurred by the landlord in rerenting the premises together with statutory court costs and reasonable attorney's fees.*

(Italics indicate vetoed section.)

The attempted veto, if effective, would change existing law, and would increase the burden upon the landlord. The attempted veto must be considered as a whole. The item of

attorney's fees, if it stood alone, might have been a proper subject of a veto, however, since the balance of the attempted veto is improper the whole must fail. It is, therefore, invalid as a veto.

Section 43 of the act reads:

> *The provisions of this 1973 amendatory act shall not apply to any lease of a single family dwelling for a period of a year or more or to any lease of a single family dwelling containing a bona fide purchase by the tenant:* PROVIDED, *That an attorney for the tenant must approve on the face of the agreement any lease exempted from the provisions of this act as provided for in this section.*

(Italics indicate this entire section vetoed.)

This veto of an entire section is definitely affirmative in character. It makes the act applicable to a substantial class of transactions which the legislature had intended to exempt from the act.

Section 47 states:

> *Sections 1 through 37 of this 1973 amendatory act shall not apply to any lease entered into prior to the effective date of this 1973 amendatory act. All provisions of this 1973 amendatory act shall apply to any lease or periodic tenancy entered into on or subsequent to the effective date of this 1973 amendatory act.*

(Italics indicate this entire section vetoed.)

This attempted veto of a whole section would have had the effect of extending the act to leases entered into prior to the effective date of the act. Without the necessity of discussion of possible impairment of contract versus the police power, there can be no doubt this extends the effect of the act and is, therefore, affirmative.

For the reasons stated in connection with each of the attempted vetoes, the decision of the trial court is affirmed

in whole and the attempted vetoes are hereby found in each instance to be invalid.

ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and HOROWITZ, JJ., and LANGSDORF, J. Pro Tem., concur.