[Civ. No. 12752.　First Dist., Div. One.　Mar. 5, 1945.]

ROBERT CALLAHAN et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

WESLEY F. MURRAY et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

John J. O'Toole, City Attorney; and Walter A. Dold, Chief Deputy City Attorney, for Appellants.

Byrne, Lamson & Jordan and Paul S. Jordan as Amici Curiae on behalf of Appellants.

Wesley F. Murray, in pro. per., and Melvin M. Belli for Respondents.

KNIGHT, J.—These two proceedings in mandamus were consolidated for trial and a single judgment was entered in favor of the respective plaintiffs, from which the defendants in each proceeding have appealed.

The proceedings called for a judicial interpretation of one paragraph in each of the 1943 amendments to sections 35 and 36 of the San Francisco Charter. The effect of those amendments was to increase the pay rates of the members of the police and fire departments; and the determinative question presented was and is as to when the increased pay rates started.

The pertinent paragraph of the amendment to section 35, relating to the police department, reads as follows: "This amendment shall become effective when the joint legislative resolution approving such amendment is filed with the Secretary of State, *and* the board of supervisors has appropriated the funds necessary in connection therewith, but not later than July 1, 1943." (Italics ours.) The pertinent paragraph of the amendment to section 36, relating to the fire department, reads as follows: "This amendment shall become effective when the joint legislative resolution approving such amendment is filed with the Secretary of State, *and the increased salaries provided for herein shall be payable only when the proper appropriation has been made to meet said salaries* but not later than July 1, 1943." (Italics ours.)

The amendments were adopted by the electorate of the city at the general election held on November 3, 1942; the joint resolution of the state Legislature approving the amendments was filed with the Secretary of State on January 11, 1943; but the board of supervisors did not appropriate the funds necessary to meet the pay rate increases called for by the

amendments until June 30, 1943, the ending of the fiscal year 1942-1943. Plaintiffs claimed, nevertheless, that the increased pay rates began on January 11, 1943, the date on which the joint legislative resolution was filed with the Secretary of State; whereas the city contended that the increased pay rates did not begin until July 1, 1943—the beginning of the new fiscal year — that is, the next day after the board of supervisors had made the appropriation to meet the payment thereof.

We are of the opinion that the trial court's decision upholding the plaintiffs' contention cannot be sustained without doing violence to the language of those paragraphs of the amendments here under consideration. As will be noted, under the clear and positive terms of the amendment to section 35 (referred to in the briefs as the Policemen's Amendment) the amendment did not "become effective" until the happening of two separate and distinct events; first, the filing of the joint legislative resolution with the Secretary of State, *and* secondly, the appropriation by the board of supervisors of the necessary funds in connection with the increases, which the board was required to appropriate not later than July 1, 1943; consequently under no theory could it be held that the increase started prior to the effective date of the amendment. The amendment to section 36 (referred to as the Firemen's Amendment), unlike the Policemen's Amendment, provided that it should become effective when the joint legislative resolution was filed with the Secretary of State, but it then went on to declare in plain terms that the increased salaries provided for therein should be payable "only" when proper appropriation was made to meet the increase, which as in the case of the Policemen's Amendment was required to be made not later than July 1, 1943. In other words, by the terms of both amendments the increased pay rates were not to begin until the board of supervisors appropriated the funds sufficient to meet the increased pay; and the only limitation that was placed on the power thus conferred on the board was that it was required to make such appropriation not later than July 1, 1943. Plaintiffs argue that the use of the word "payable" in the second clause of the Firemen's Amendment demonstrates that it was intended that the increase should start on the effective date of the amendment, that is, upon the filing of the joint legislative resolution with the Secretary of State, but that the actual

payment of the increase should be delayed until the board made the appropriation necessary to meet the payment thereof. Manifestly, however, if it had been the intention to start the increased pay rates instantly upon the effective date of the amendment, then the second and qualifying clause above *quoted* would have been omitted entirely, so that the amendment would then have read simply: "This amendment shall become effective when the joint legislative resolution approving such amendment is filed with the Secretary of State."

As said in the cases of *County of Los Angeles* v. *Lamb,* 61 Cal. 196, and *Williams* v. *City of Vallejo,* 36 Cal.App. 133 [171 P. 834], a statute may be framed legally so as to provide an effective date and also an operative date. There was nothing strange or illegal here, therefore, in thus framing the Firemen's Amendment; and since the second and qualifying clause was added and the amendment was submitted to the electorate and ratified in that form, the latter clause cannot be now eliminated or disregarded by way of statutory construction. " 'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." (Sutherland, Statutory Construction (3d ed.), vol. 2, p. 339, § 4705.) Put another way, courts must take a statute as they find it, and it is their duty to construe it as it stands enacted. (*Electric L. & P. 'Co.* v. *San Bernardino,* 100 Cal. 348 [34 P. 819].) Their interpretation must be based on the language used. They have no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed. (*Seaboard Acceptance Corp.* v. *Shay,* 214 Cal. 361 [5 P.2d 882].)

The cases cited by plaintiff interpreting the meaning of the word "payable" are in no way helpful here. All but three of them involved actions arising out of the field of commercial law, and the remaining three have no bearing upon the questions here involved.

The two amendments were submitted to the electorate for ratification or rejection in one proposition on the ballot, and at the trial, subject to the objection of the defendants, plaintiffs were permitted to introduce extrinsic evidence, the

asserted purpose of which was to show that it was the intention of the board of supervisors to provide that the increases for both policemen and firemen should begin upon the filing of the joint legislative resolution with the Secretary of State. The extrinsic evidence consisted chiefly of the historical background of the two amendments before the board of supervisors, and the minutes of the board, which purported to set forth among other things certain oral statements made before the board leading up to the approval of the amendments. Such evidence was introduced and received under the theory advanced by plaintiffs that there was but one amendment—not two—submitted to and voted upon by the electorate; and that a patent ambiguity appeared in this "single" amendment in that it provided that the increase in pay rates for the policemen should begin upon the making of the appropriation therefor by the board of supervisors, whereas, so plaintiffs contended, it provided that the increases for the firemen should begin when the joint legislative resolution was filed with the Secretary of State. Plaintiffs urged, therefore, that by applying certain extrinsic interpretive aids the trial court would be justified in holding that since (so plaintiffs contended) the firemen's increase began upon the filing of the joint legislative resolution with the Secretary of State, the increase for the policemen began at the same time.

We are of the opinion that as defendants contend there were two separate and distinct amendments—not one—and that such being the case each amendment must be construed apart from the other; and as already pointed out, when so construed, no ambiguity appears in either. With reference to the question as to whether there was but one amendment, the evidence shows that although both amendments were submitted to the electorate as one proposition on the ballot, the preamble to the proposition plainly stated that it was a proposal to amend two sections of the charter—section 35 relating to the rates of pay for members of the police department, and section 36 relating to the rates of pay for members of the fire department. The proposed amendments were lengthy, and the one amending section 35 was headed "Police Department," and the amendment to section 36 was headed "Fire Department." In other words, each amendment referred to a different subject matter, to a different department of the city government, and amended separate sections of the charter. The mere fact, therefore, that

the board of supervisors deemed it advisable to submit the amendments jointly as one proposition on the ballot could not and did not convert the two amendments into a single amendment.

Even assuming, however, that under any possible theory the extrinsic evidence was admissible, it did not prove, as plaintiffs contend, that it was the intention of the board to make the increased pay rates begin at the time the joint legislative resolution was filed with the Secretary of State. To the contrary, it shows that the intention was to provide that the increases should begin only when the board appropriated the necessary funds to meet the payment of such increases. In this connection the evidence relating to the historical background of the Firemen's Amendment, which plaintiffs stress, shows the following: As originally presented to the board for approval the amendment read: ''This amendment shall become effective when ratified by the State Legislature''; and afterwards a substituted form was presented reading: ''This amendment shall become effective when certified by the Secretary of State after ratification by the State Legislature.'' Obviously, had either of those forms been approved the starting period of the increased pay rates thereunder would have been, as plaintiffs contend, January 11, 1943, the effective date of the amendment. But neither of those forms were approved. After considerable discussion the amendment that was finally approved and submitted to the electorate provided first that the amendment should become effective upon the filing with the Secretary of State of the joint legislative resolution approving the amendment, and then there was added thereto the second and qualifying clause that ''the increased salaries provided for herein shall be payable only when the proper appropriation has been made to meet said salaries but not later than July 1, 1943.'' As heretofore pointed out, if it had been the intention of the board to start the increased pay rates instantly upon the effective date of the amendment, then the second and qualifying clause would not have been added and the amendment would then have read: ''This amendment shall become effective when the joint legislative resolution approving such amendment is filed with the Secretary of State.''

Furthermore, the oral statements made before the board show that the question of the ability of the city to pay the

salary increases immediately upon approval by the Legislature was squarely presented for the board's consideration and that the advisability of definitely committing the city to payment immediately following legislative approval was questioned. That the problem was considered vital is evidenced by the remarks and suggestions of the various supervisors and representatives of the police and fire departments; and from these statements it definitely appears that the board did not wish to frame amendments which would make the pay increases obligatory upon the city until the board, in its discretion, should so determine and appropriate the necessary money for that purpose, provided, however, that the increases should, in any event, go into effect by July 1, 1943. No other reasonable or fair interpretation can be placed on these statements.

Moreover, and in any event, the province of the board of supervisors herein was limited to the approval of the form of the amendments that were to be submitted to the vote of the electors. The enactment of the amendments consisted of ratification thereof by the electors, and where the courts are called upon to construe a statute so enacted, the question is as to what the electors understood and intended. Of course the electors here had no way of knowing what discussions took place within the chambers of the board of supervisors in framing the measures so to be submitted to the vote of the electors; and it is quite evident, therefore, that in determining what the electors understood and intended by the amendments, the statements made before the board of supervisors are of little if any value. None of the other extrinsic evidence introduced has any bearing upon the question at issue, and consequently it need not be narrated.

In June, 1942, just prior to the beginning of the fiscal year 1942-1943, there was allocated to the police and fire departments in accordance with the budget certain sums of money; and it appears that on June 30, 1943, at the end of that fiscal year, there was a surplus of funds so allocated to those departments sufficient to begin the payment of the increased pay rates at that time, whereupon the board of supervisors made the necessary appropriation to meet the payment thereof. Plaintiffs argue that since there was a surplus of funds so allocated at the beginning of the fiscal year no further appropriation by the board, after the amendments became

effective, was essential. There are two answers to this argument: first, the evidence shows that the allocation of funds at the beginning of the fiscal year was made for definite purposes, and that there was no way of ascertaining prior to June 30, 1943, that there would be a surplus. Secondly, the provisions of the amendments themselves show definitely that they called for the making of the appropriation subsequent to the effective date of the amendments; and admittedly no such subsequent appropriation was made.

It is our final conclusion, therefore, that since under the terms of both amendments the increased pay rates provided for therein did not begin until the board of supervisors made the necessary appropriation to meet the payment thereof, and since the board did not make such appropriation until June 30, 1943, the increased pay rates did not begin until July 1, 1943. The judgment must, therefore, be reversed, and it is so ordered.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 3, 1945. Gibson, C. J., Carter, J., and Schauer, J., voted for a hearing.