Argued April 8, affirmed April 11, 1968

GEISER, *Respondent, v.* MYERS ᴇᴛ ᴀʟ, *Appellants.*

439 P. 2d 859

*Louis S. Bonney,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief were Robert Y. Thornton, Attorney General, and William T. Linklater, Assistant Attorney General.

*Thomas B. Brand,* Salem, argued the cause for respondent. On the brief were Brand, Lee & Scott.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, HOLMAN and LUSK, Justices.

LUSK, J.

At the 1967 Regular Session of the Legislative Assembly there was created an additional office of circuit court judge for the nineteenth judicial district comprising Clatsop, Columbia and Tillamook Counties, to be known as Position No. 3.

Plaintiff, a resident, inhabitant, taxpayer, and voter in Columbia County, brought this suit to enjoin the secretary of state from certifying to the appropriate county clerks the names of candidates for such Position No. 3 to be voted on at the primary election on the fourth Tuesday in May, 1968. A demurrer to the complaint was overruled by the trial court. De-

fendants refused to plead further and have appealed from a decree granting the relief sought by the plaintiff. Because of the short time remaining before the election we advanced the case for argument.

The case calls for construction of certain provisions of Oregon Laws 1967, ch 533. Section 1 of this Act amended ORS 3.011 by increasing the number of judges in the nineteenth judicial district from two to three. Section 5 reads:

> "As soon as practicable after the operative date of this section, the Governor shall appoint a person as the third circuit court judge for the nineteenth judicial district, to occupy Position No. 3 as provided in ORS 3.011, and to hold office until his successor is elected at the regular biennial general election in 1968 and qualifies."

Section 18 provides in part:

> "The following parts of this Act shall first become operative July 1, 1968:
>
> "(1) The amendments of ORS 3.011 by section 1 of this Act relating to the *nineteenth* and twenty-first judicial districts.
>
> "(2) Sections *5* and 6 of this Act." (Italics added.)

Section 21, an emergency clause, provides that the Act "shall take effect on July 1, 1967."

ORS 249.350 requires the secretary of state to certify to the various county clerks the state offices for which candidates are to be nominated by the major political parties at an ensuing primary election and the names of candidates for such offices. This provision is made applicable to the nomination of judges by ORS 252.080.

The defendants contend that because chapter 533

took effect, as provided in section 21, on July 1, 1967, the office of circuit judge for the nineteenth judicial district, Position No. 3, came into existence on that date, that it was the intention of the legislature, as expressed in section 5, that the office should be filled at the general election in November, 1968, and, therefore, that it is the duty of the secretary of state to certify the office and the names of candidates for nomination thereto at the forthcoming primary election in accordance with the provisions of ORS 249.350.

██ To support this position counsel cite the rule that when an office is created it comes into legal existence immediately when the act takes effect, *State ex rel Madden v. Crawford,* 207 Or 76, 84, 295 P2d 174. That would be so here but for the fact that the legislature provided in section 18 that neither the creation of the new judgeship nor the manner of filling it should become "operative" until July 1, 1968. True, the entire enactment became law by virtue of the emergency clause a year before that day, but it is not disputed that it is within legislative competence to suspend the operation of a law or particular features of a law until a future date, *State ex rel Appling v. Chase,* 224 Or 112, 121, 355 P2d 631. "The true rule is that the law takes effect immediately, although its operation is deferred for a time." *State ex rel. Case v. Howell,* 85 Wash 294, 299, 147 P 1159. The whole question is one of legislative intent and to hold that the office came into existence on July 1, 1967, would be to ignore plain language to the contrary and entail absurd consequences.

If a nominating election for the office should be held on the fourth Tuesday of May this year and a candidate should receive a majority vote, that candidate's name alone could appear on the ballot at the

general election in November, ORS 252.050 (4). Should
the governor then—as well he might—appoint a per-
son to the office who had not been a candidate at the
primary election, the appointee, if he desired to run
for election in November, could not have his name on
the ballot. He could not even be a nominee. ORS
252.060 provides:

> "* * * [I]f a vacancy occurs by death, resig-
> nation *or otherwise* in the office of judge * * *
> on or after the date set for holding primary elec-
> tions, * * * candidates for such judicial office
> shall be nominated in the manner provided for the
> nomination of independent candidates [i.e., by an
> assembly of electors, ORS 249.710–249.860]." (Ital-
> ics added.)

■ Under defendants' theory no vacancy would oc-
cur in the office "on or after the day set for holding
primary elections"; it would have occurred on July 1,
1967, for when an office created by the legislature
comes into legal existence by that very fact the office
becomes vacant, *State ex rel Madden v. Crawford,*
supra.

Moreover, upon the occurrence of such vacancy the
duty would have devolved upon the governor to fill it
by appointment, Constitution, Art V, § 16. The gov-
ernor, of course, made no appointment, and obviously
the legislature did not intend that he should at that
time. Certainly, the intention is not to be imputed to
the legislature to direct the governor not to exercise
his constitutional appointing power until a year after
a vacancy occurs.

■■ No such difficulties arise if effect is given to
the statute as it is written. It became a law on July 1,
1967; some of its provisions became immediately oper-
ative; the newly created office of judge for the nine-

teenth judicial district, however, will not come into legal existence until July 1, 1968; at that time a vacancy in the office will arise, whereupon the governor will make an appointment to fill the vacancy pursuant both to the Constitution and the statute, and election to the office will follow, the nominees to be chosen by assemblies of electors. The objection might be made that this method of nominating candidates is less desirable than that provided by the primary law, but it is an entirely lawful method, and the fact that it is the only one that will be available in the circumstances cannot be successfully urged as a reason for the court to refuse to give effect to the plain intent of the statute.

If additional evidence of that intent were needed it will be found in section 3 of the Act, which deals with an amendment creating a new office of circuit court judge in the fourth judicial district (Multnomah County). Section 3 provides that this amendment "shall first become operative on the first Monday in January 1969, except that such provision shall be operative prior thereto for the purpose of nominating and electing the judge in 1968 in accordance with the provisions of ORS 252.010 to 252.130, to assume the duties of the office on the first Monday in January 1969 * * *." The foregoing provision demonstrates that when the legislature decided that nominations for a newly created office of judge to come into existence at a future date should be made through the primary system it was careful to put that decision into express language. This was not done with respect to the newly created office of judge in the nineteenth judicial district.

The decree of the circuit court is affirmed.