[No. 47194. En Banc. November 13, 1980.]

THOMAS H. FAIN, *Petitioner*, v. BRUCE CHAPMAN, *as Secretary of State, Respondent.*

*Diamond & Sylvester,* by *Lyle L. Iversen,* for petitioner.

*Slade Gorton, Attorney General,* and *Edward B. Mackie, Deputy,* for respondent.

*Norm Maleng, Prosecuting Attorney,* and *Fred A. Kaseburg, Deputy,* amici curiae.

HICKS, J.—This case is similar to the consolidated cases of Hallin v. Trent and Straw v. Greco. *See Hallin v. Trent,* 94 Wn.2d 671, 619 P.2d 357 (1980). Those cases involved Laws of 1979, 1st Ex. Sess., ch. 202 (hereinafter chapter 202), which provided for new judicial positions in the superior courts in certain counties. The issue presented to this court was whether the Auditors in Cowlitz and Pierce Counties should be required to accept filings and declarations of candidacy for the new judicial positions for election in 1980. We held the positions were not subject to the elective process in 1980.

Here, we are concerned with Laws of 1980, ch. 183 (hereinafter chapter 183), which provides for five new judicial positions in the Superior Court for King County, subject to approval of the King County Council prior to July 1, 1980. The new positions come into being January 1, 1981.

By ordinance No. 4930, the King County Council gave its approval for the new judicial positions, indicated its desire that the prospective positions be filled by the elective process in 1980 and directed "the appropriate County election officials shall accept declarations of candidacy for such positions in the manner provided by law." Declarations of candidacy for the prospective positions were accepted by

the appropriate King County election officials for the 1980 election.

This action was brought by Thomas H. Fain, petitioner, as an original action against Bruce Chapman, Secretary of State and chief elections officer of the State of Washington, as respondent. The objective of the action was to have this court prevent the election from proceeding for any of the new judicial positions for the Superior Court for King County which become effective January 1, 1981.

The Secretary of State was represented before this court by an assistant attorney general. King County appeared amicus curiae and was represented by a deputy prosecuting attorney from the King County Prosecutor's office. In the course of oral argument, a question was raised as to the necessity of King County being a party to the proceedings. King County's counsel proposed that it be made a party, and counsel for Fain agreed. We shall regard King County as a party litigant in this matter.

In our view, this case is controlled by *Hallin v. Trent, supra.* Further discussion is required only for consideration of the challenge to the Governor's veto as exercised in this instance.

In the 1980 session of the Washington State Legislature, Substitute Senate Bill 3207, 46th Legislature (1980) (hereinafter SSB 3207), amended Laws of 1951, ch. 125, § 3, as last amended by chapter 202, section 1. The bill as passed by the legislature and submitted to the Governor reads as follows:

> There shall be in the county of King no more than thirty–nine judges of the superior court; . . . PROVIDED FURTHER, That the additional judicial positions created by the 1980 amendment of this section for the county of King shall become effective only if prior to July 1, 1980, the county through its duly constituted legislative authority has documented its approval thereof and has agreed to pay out of county funds without reimbursement from the state, the same portion of all expenses of such additional positions as it provides for the positions

presently existing, in which case such positions shall become effective on January 1, 1981, . . .

Laws of 1980, ch. 183, § 1. The Governor vetoed the remaining portion of the bill which read as follows:

and shall be filled by persons elected and qualified at the general election immediately preceding January 1, 1981, and in which case the secretary of state and appropriate county election officials shall accept declarations of candidacy for such positions during the filing period specified by RCW 29.18.030.

Laws of 1980, ch. 183, § 1.

Const. art. 3, § 12 (amendment 62), approved by the voters November 5, 1974, concerns the veto power of the Governor. The portion of the amendment pertinent to the issue here to be determined states:

If any bill presented to the governor contain several sections or appropriation items, he may object to one or more sections or appropriation items while approving other portions of the bill: *Provided,* That *he may not object to less than an entire section . . .*

(Italics ours.) Const. art. 3, § 12 (amendment 62).

Very simply put, the issue in this case is the validity of the Governor's veto. If it is valid, the prospective King County Superior Court positions may not be filled by election in 1980. *Hallin v. Trent, supra.* On the other hand, if the Governor's veto violates Const. art. 3, § 12 (amendment 62), the King County election officials were correct in accepting declarations of candidacy and filing fees for the prospective judicial positions.

■ We are of the view that the veto was properly exercised in this instance. We said in *Washington Ass'n of Apartment Ass'ns, Inc. v. Evans,* 88 Wn.2d 563, 565, 564 P.2d 788 (1977):

In order for a veto to be valid, it must pass two tests. Each of these tests is independent of the other, and if an attempted veto fails either test, it is invalid. First, the excised portion of a bill must constitute an item or section within the meaning of Const. art. 3, § 12. Moreover, what constitutes a valid item or section is a question of

law for the court to decide, and does not depend upon the legislature's arrangement of the subject matter by arbitrary divisions of a bill into items or sections. *Cascade Tel. Co. v. State Tax Comm'n*, 176 Wash. 616, 30 P.2d 976 (1943).

Here, we are concerned only with the first test and a section veto. The veto in this instance seems to us identical to the veto of section 6 of chapter 202 discussed in *Hallin* and conceded to be a section veto. *Compare* chapter 202 *with* chapter 183.

Chapter 202 is divided into sections. Section 6 concerned subject matter separate and independent from the rest of the measure. That subject was the method of filling the prospective judicial positions. The method selected by the legislature was the elective process. When the Governor vetoed the section, that particular method vanished from the bill, subject to the legislature overriding the veto. Because the veto was not overridden, the general law was left to provide the manner of filling the new positions. Relying on *Fain v. Chapman*, 89 Wn.2d 48, 569 P.2d 1135 (1977), we held that the new judicial positions could not be filled by the elective process in 1980. *Hallin v. Trent, supra.*

SSB 3207 was a legislative effort to avoid a gubernatorial veto similar to the one discussed in *Hallin*. The bill is designated as one section and consists of but a single sentence. *See* chapter 183. The sentence embraces several subjects. One of those subjects was vetoed by the Governor. That subject was the method designated by the legislature (elective process) by which the new judicial positions should initially be filled.

■ Similar to chapter 202, this veto was also upheld in the sense that the legislature failed to override it. Thus, the vetoed material becomes of no consequence. Chapter 183 is to be regarded as if the excised language had never been written by the legislature. *Hallin v. Trent*, 94 Wn.2d 671, 619 P.2d 357 (1980).

Finally, we must determine whether the Governor's veto of approximately 45 words in SSB 3207 constituted the veto of an entire section.

█ When the legislature enacts legislation, it is presumed to be familiar with judicial decisions of this court construing existing statutes and the state constitution. *El Coba Co. Dormitories, Inc. v. Franklin County PUD*, 82 Wn.2d 858, 862, 514 P.2d 524 (1973). From this presumption it follows that the legislature knew, both when it passed the joint resolution which became amendment 62 and when it enacted SSB 3207, that this court had construed Const. art. 3, § 12 and determined that what constitutes an item or a section in legislation is a judicial, not a legislative, question. *See Cascade Tel. Co. v. State Tax Comm'n*, 176 Wash. 616, 30 P.2d 976 (1934). Section divisions made by the legislature in its legislation are entitled to considerable deference and will normally be upheld, but such a result is not inevitable. *Groves v. Meyers,* 35 Wn.2d 403, 213 P.2d 483 (1950).

█ Here, we perceive no significant difference between the subject matter vetoed in chapter 202 and the vetoed portion of chapter 183. In each instance a separate subject, independent of the rest of the legislation, was involved. In neither instance did the matter excised have any effect on the basic thrust of the legislation—the providing of new judicial positions. Consequently, we feel compelled to hold that the matter vetoed in chapter 183 was as much an entire section of that chapter as was section 6 vetoed in chapter 202.

For the above reasons, we declare the Governor's veto, as set forth in Laws of 1980, ch. 183, to be the veto of an entire section and valid. It follows that the new judicial positions in the Superior Court for King County coming into existence January 1, 1981, may not be filled by the elective process in 1980 and King County election officials shall not conduct an election for such positions in 1980.

It is so ordered.

ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, and WILLIAMS, JJ., concur.

UTTER, C.J. (concurring)—I concur for the reasons stated in my concurring opinion in *Hallin v. Trent,* 94 Wn.2d 671, 619 P.2d 357 (1980). The veto was valid for the reasons stated in the majority opinion.

BRACHTENBACH, J., concurs with UTTER, C.J.

DOLLIVER, J. (dissenting)—The argument contained in my dissent in *Hallin v. Trent,* 94 Wn.2d 671, 619 P.2d 357 (1980), is equally applicable to this case. In my opinion, the legislature did provide for the initial election rather than the initial appointment of the additional King County judges. As in *Hallin,* this was accomplished without the portion of the statute vetoed by the Governor. Thus, as in *Hallin,* there is no need to determine the validity of the veto under Const. art. 3, § 12.

I dissent.