[No. 47176. En Banc. November 13, 1980.]

DAVID HALLIN, *Appellant,* v. JACK TRENT, *Respondent.*

CHESTER F. STRAW, *Appellant,* v. RICHARD GRECO, *Respondent.*

*David B. Hallin,* pro se, and *Lawrence W. Moore,* for appellants.

*Henry R. Dunn, Prosecuting Attorney for Cowlitz County, Gordon Sivley, Deputy, Don Herron, Prosecuting Attorney for Pierce County,* and *Roger J. Miener, Deputy,* for respondents.

*Slade Gorton, Attorney General, Edward B. Mackie, Deputy, Norm Maleng, Prosecuting Attorney for King County,* and *Fred A. Kaseburg, Deputy,* amici curiae.

HICKS, J.—These consolidated cases arise from the enactment of Laws of 1979, 1st Ex. Sess., ch. 202, providing for new judicial positions in the Superior Courts for Cowlitz, Kitsap and Pierce Counties. New judicial positions in the superior courts of other counties were also provided in chapter 202, but they are not at issue here.

All of the judicial positions established by chapter 202 in the three counties above named were to be *effective* January 1, 1981. Chapter 202, as it was sent to the Governor, consisted of six numbered sections, the last section of which the Governor vetoed. The vetoed section purported to require that the judicial positions authorized be filled by election in the 1980 general election.

The defendants herein are the Auditors of Cowlitz and Pierce Counties. Each refused to accept filings for a judicial position not yet in existence.

Plaintiff David Hallin brought an action in the Superior Court for Cowlitz County for a writ of mandate directing Jack Trent, Auditor of Cowlitz County, to accept his declaration of candidacy and filing fee for Cowlitz County Superior Court position No. 3. The matter was heard and the writ was denied by the Honorable Alan Hallowell, one of the judges of the Cowlitz County Superior Court. Hallin sought direct and expedited review in this court, which was granted.

Richard Greco, Auditor of Pierce County, likewise proclaimed that he would refuse to accept filings for the Pierce County judicial positions that would come into existence January 1, 1981. Chester F. Straw, a qualified voter of Pierce County, on behalf of himself and all similarly situated voters of Pierce County, sought relief similar to that requested in Cowlitz County. Additionally, out of county or retired judges were requested to hear the matter. The Honorable Horace G. Geer, former Pierce County Superior

Court Judge, was agreed upon as judge pro tempore to hear the matter. After the hearing in Pierce County, Judge Geer denied the writ. Direct and expedited review was accepted in this court. The case was consolidated with that of Cowlitz County.

This court convened en banc Thursday, August 7, 1980. King County and the Secretary of State appeared as amici curiae. Extended time was granted for argument before the court and both amici were heard in addition to the parties. Because of the urgency of the matter, the court entered an order the same day affirming the trial court in each instance. This opinion sets forth the court's reasons for its order.

RCW 2.08.061, as amended by the Laws of 1979, 1st Ex. Sess., ch. 202, § 1, p. 1784, provides in part:

> There shall be in the county of . . . Pierce thirteen judges of the superior court: *Provided,* That the additional offices herein created for the county of Pierce shall be effective January 1, 1981 . . .

Chapter 202, section 3, amending RCW 2.08.064, contains the same provision for Cowlitz County, but only one new judicial position is involved. Thus, the legislature provided additional judicial positions for the Superior Courts of Pierce and Cowlitz Counties "effective January 1, 1981."

The sole issue with which we are presented in these actions is whether the positions are to be filled through the elective process in 1980, thus requiring the auditors of the respective counties to accept filing fees and declarations of candidacy for them.

Const. art. 4, § 5 provides for the procedure by which superior court positions are filled.

> There shall be in each of the organized counties of this state a superior court for which at least one judge shall be elected by the qualified electors of the county at the general state election: . . . If a vacancy occurs in the office of judge of the superior court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election, and the

judge so elected shall hold office for the remainder of the unexpired term.

The legislature adopted this same procedure for those instances where vacancies occurred because of establishment of new positions. RCW 2.08.069 states as follows:

> Unless otherwise provided, upon the taking effect of any act providing for additional judges of the superior court and thereby creating a vacancy, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall be at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term.

In this instance it is necessary to determine when the vacancies occur. The above quoted statute provides that a vacancy will occur "upon the taking effect of any act providing for additional judges of the superior court and thereby creating a vacancy, . . ." The legislative act providing additional judicial positions for Pierce and Cowlitz Counties will not take effect until January 1, 1981.

 Unless otherwise specifically indicated in the legislation, measures signed by the Governor become effective at the time designated in the constitution, which is 90 days after the adjournment of the legislature. In this case, however, there was a clear indication otherwise. In laws of 1979, 1st Ex. Sess., ch. 202, the legislature specified varying effective dates for judicial positions in different counties, though Cowlitz, Kitsap and Pierce Counties all have the same effective date, January 1, 1981. Since statutes may only speak from their effective date (*see Skidmore v. Clausen,* 116 Wash. 403, 199 P. 727 (1921); *State ex rel. French v. Seattle,* 187 Wash. 58, 59 P.2d 914 (1936); *State ex rel. Thorp v. Devin,* 26 Wn.2d 333, 173 P.2d 994 (1946)), the positions here concerned come into being only on that date (January 1, 1981), and not before. Thus, vacancies for the positions do not occur before that date.

A legislature has authority to pass a law creating multiple effective dates. In so doing, the effective date is the date

on which a particular section becomes operative and not the time of its passage. *See Yelle v. Kramer,* 83 Wn.2d 464, 478, 520 P.2d 927 (1974):

The legislature, in the absence of constitutional restraint, may fix any time in the future as the time when a statute shall become effective. *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 P. 28 (1915). It is a cardinal rule that a statute passed to take effect at a later date speaks from the time it becomes operative and not from the time of its passage.

In *Walker v. Lanning,* 74 Wash. 253, 256, 133 P. 462 (1913), the court quoted with approval as follows:

"Until the time arrives when it is to take effect and be in force, a statute which has been passed by both houses of the legislature and approved by the executive *has no force whatever for any purpose,* and all acts purporting to have been done under it prior to that time are void." 36 Cyc. 1192.

(Italics ours.)

*Fain v. Chapman,* 89 Wn.2d 48, 569 P.2d 1135 (1977), controls in this action. There, an identical question was presented that is here being considered. At page 51, we stated:

The first issue is at what point a "vacancy", as that term is utilized in the constitution, will occur in each of these newly created positions. Petitioner contends no "vacancy" will exist in the positions here at issue until the act creating them becomes effective. We agree. A statute speaks from its effective date and no action may be undertaken pursuant to it prior to that time. *Yelle v. Kramer,* 83 Wn.2d 464, 520 P.2d 927 (1974); *Walker v. Lanning,* 74 Wash. 253, 133 P. 462 (1913). In *State ex rel. New Washington Oyster Co. v. Meakim,* 34 Wn.2d 131, 140, 208 P.2d 628 (1949), a case concerning the powers of a retired superior court judge, this court quoted with approval the following language:

"The word 'vacancy,' as applied to an office, has no technical meaning. An *existing* office without an incumbent is vacant. There is no basis for the distinction that it applies only to an office . . .

(Italics ours.) These decisions indicate there can be no

"vacancy" in these soon–to–be–created positions until such time as the statute which gives them life becomes effective.

We hold that unless so provided by law, there can be no filling by election of a prospective position not in existence at the time of the election. The Auditors of Pierce and Cowlitz Counties were correct in refusing to accept filings for judicial positions not yet in existence.

The contention has been made that the legislature did indicate an intent that the judicial positions established for Cowlitz, Kitsap and Pierce Counties be filled by the electoral process in the 1980 general election. Section 6 of Laws of 1979, 1st Ex. Sess., ch. 202, when submitted to the Governor, certainly did so provide. The Governor vetoed that section.

■ In approving or disapproving legislation, the Governor acts in a legislative capacity and as part of the legislative branch of government. In *Shelton Hotel Co. v. Bates*, 4 Wn.2d 498, 506, 104 P.2d 478 (1940), we stated:

> When referring to what the legislature intended, we must not forget that the governor, when acting upon bills passed by both houses of the legislature, is a part of the legislature, and acting in a legislative capacity, and we cannot therefore consider the intent of the house and the senate apart from the intent of the governor.

The Governor's veto of a portion of a measure, if the veto is not overridden, removes the vetoed material from the legislation as effectively as though it had never been considered by the legislature. In *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 408, 25 P.2d 91 (1933), we said:

> In the first place, and to clear away immaterial matters, it should be said that the governor's veto of parts of the measure now means nothing whatsoever. In exercising the veto power, the governor acts as a part of the legislative bodies, and the act is to be considered now just as it would have been if the vetoed provisions had never been written into the bill at any stage of the proceedings.

The rule is that a veto may be used only in a destructive manner, not affirmatively to create basically different legislation. *Washington Ass'n of Apartment Ass'ns, Inc. v. Evans,* 88 Wn.2d 563, 564 P.2d 788 (1977). Here, the veto was used destructively without affecting the basic legislation. As originally passed by the legislature, the principal objective of the legislation was the providing of new judicial positions for various counties. Section 6 of the bill, as submitted to the Governor, provided that the new positions should be filled by the electoral process. The Governor, acting in a legislative capacity and as part of the legislative process, excised section 6 of the measure and approved the rest. That, however, is not the end of the legislative process. The measure is returned to the originating house where the veto may be overridden with the requisite number of votes. If both bodies, House and Senate, override the veto, the bill becomes law in the form it was originally submitted to the Governor. The legislature may even, within 45 days after adjournment, reconvene in an extraordinary session to reconsider any veto by the Governor. Const. art. 3, § 12. In this case, however, *the legislature did not choose to do so.* If the veto is not overridden, the measure becomes law and the excised material is regarded as though it had never been written by the legislature.

The basic thrust of the legislation, the providing of new judicial positions to the counties, was not disturbed by the veto. As section 6 was excised from the act, the general law provided the manner in which the new judicial positions would be filled. Since the legislature did not override the Governor's veto in this case, the legislature must have understood the general law would apply. *Fain v. Chapman, supra,* so held.

The judgments of the Superior Courts for both Pierce and Cowlitz Counties are affirmed.

ROSELLINI, BRACHTENBACH, HOROWITZ, and WILLIAMS, JJ., and RYAN, J. Pro Tem., concur.

UTTER, C.J. (concurring in the majority)—The majority correctly concludes that *Fain v. Chapman,* 89 Wn.2d 48, 569 P.2d 1135 (1977), requires these judgeships be filled by gubernatorial appointment. *Fain* means that for the purposes of gubernatorial appointments, a vacancy arises when an office comes into existence. In that case, the judgeship came into existence when the statute became law.

Often, however, the date at which an act becomes law is different from that when it becomes operational, or as here, when the new office comes into existence. *See Anderson v. Penix,* 138 Tex. 596, 161 S.W.2d 455 (1942); *Callahan v. City and County of San Francisco,* 68 Cal. App. 2d 286, 156 P.2d 479 (1945). "Exist" is defined as "to be in present force, activity, or effect at a given time . . ." Black's Law Dictionary 684 (4th ed. 1968). Although the statute in this case became law on September 1, 1979, Const. art. 2, §§ 1(b), 41, the offices lack the requisite force or activity until January 1, 1981, and hence no vacancies arise until then. *See State ex rel. New Wash. Oyster Co. v. Meakim,* 34 Wn.2d 131, 208 P.2d 628 (1949); *Geiser v. Myers,* 249 Ore. 543, 439 P.2d 859 (1968); *Schee v. Phelps,* 184 Iowa 1134, 169 N.W. 455 (1918).

Because the dissent believes the effective date of a statute ipso facto is also the effective date of the offices it creates, it finds a similarity between newly created judgeships and the office of a Supreme Court Justice. Once one realizes such synchronicity in dates does not always occur, as in this case, the similarity disappears. The office of a Supreme Court Justice is already in existence and will be at the November election. In contrast, as discussed above, the offices of the new judgeships do not exist until January 1. The dissent's analogy is based on the premise that both offices are now in being. Since the judgeships will not be in existence in November, unlike the Supreme Court positions, the public cannot vote for them.

BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur with UTTER, C.J.

DOLLIVER, J. (dissenting)—This case bears eloquent testimony to the celebrated dictum of deTocqueville that in America great political issues ultimately become legal issues to be determined by the courts. Here, even to the casual observer, it is apparent the political issue between the legislature and the Governor was whether certain superior court judge positions initially would be appointed by the Governor or filled by the election process. No compromise was reached. *See, e.g.,* Laws of 1951, ch. 125, § 8, p. 318. The question before the court is whether in Laws of 1979, 1st Ex. Sess., ch. 202, p. 1784, the legislature successfully eliminated the ability of the Governor to make the initial appointments. The majority holds the legislature failed. I believe it succeeded, and thus I dissent.

As the majority indicates, the critical issue is: When did the vacancies for the positions of superior court judge in Cowlitz and Pierce Counties occur? In *Fain v. Chapman,* 89 Wn.2d 48, 51, 569 P.2d 1135 (1977), we held "A statute speaks from its effective date and no action may be undertaken pursuant to it prior to that time." In *Fain,* the effective date of the *statute* as provided by the legislature in Laws of 1977, 1st Ex. Sess., ch. 311, p. 1154, was November 1, 1977. This was also the date on which the new judicial offices were created, and the date on which the vacancy in the offices occurred. But for this provision, the act would have become effective on September 21, 1977. We held in *Fain* that, under the requirements of RCW 29.21.380(3), no election could be held in 1977 and that the Governor would appoint as of November 1, 1977, the effective date of the statute, the date the offices were created, and the date the vacancies occurred. The election would take place in November 1978.

Laws of 1979, 1st Ex. Sess., ch. 202, p. 1784 was enacted differently. No effective date for the *statute* was included in the legislation; therefore, the statute became effective 90 days after the adjournment of the 1979 legislature. Const. art. 2, §§ 1(c), 41. The 1979 legislature adjourned June 2, 1979. The statute became law September 1, 1979.

Laws of 1979, 1st Ex. Sess., ch. 202, § 1, p. 1784 is explicit: "the additional *offices herein created* for the county of Pierce [and Cowlitz] shall be effective January 1, *1981*." (Italics mine.) The vice of the majority analysis is that it confuses the effective date of the *statute* which *creates* the offices with the date when the offices become vacant. While the offices were created as of September 1, 1979, clearly no one may hold the new office of superior court judge in Pierce County until January 1, 1981, nor may the Governor make an appointment which is effective until that date. While the office has been created, there is no *vacancy* in the office until January 1, 1981, and it cannot be filled until that date.

Chapter 202 also provided for additional judges in Spokane, Clark, Snohomish and the Mason and Thurston districts, and created the new judicial districts of Chelan and Douglas Counties with two judges and Grant County with two judges. It can hardly be contended the statute did not go into effect on September 1, 1979, particularly since new judges in Spokane, Clark, Snohomish and Mason and Thurston were appointed and since have been elected to office.

In summary, in *Fain v. Chapman, supra,* the effective date of the statute and the date the judicial offices were both created and became vacant was the same. Here the effective date of the statute and the date the offices were created were the same while the date the vacancy existed was different.

*Yelle v. Kramer,* 83 Wn.2d 464, 520 P.2d 927 (1974), is cited by the majority for the proposition that "the effective date [of a statute] is the date on which a particular section becomes operative and not the time of its passage." In *Yelle,* the question was whether state officers who were to receive a pay raise on January 1, 1974, did in fact receive an increase in salary at the time of the passage of Laws of 1973, 1st Ex. Sess., ch. 137, § 110, p. 936. The issue arose because Initiative 282 passed in November 1973 reduced the amount of the salaries granted by Laws of 1973, 1st Ex.

Sess., ch. 137, § 110, p. 936. This was alleged to be uncon-
stitutional since it was claimed to diminish the salary of
state elected officials during the term for which they were
elected. The court, consisting of nine justices pro tempore,
held that the salary which was to become effective January
1, 1974, was in fact not in effect until that date. In the
meantime, the voters intervened with Initiative 282 which
limited salary increases to 5.5 percent. Therefore, as the
court said, "Accordingly, there was no reduction of salary of
any state official or judge. On the contrary, there was a sal-
ary increase." *Yelle,* at 478.

The case before us is different in several vital particulars.
First, specific language in the statute itself provides for the
*creation* of the offices. They are in being just as all of the
other offices to be voted on this year and to be filled in 1981
are in being. The office has been created as of September 1,
1979; it cannot be filled until the vacancy occurs on January
1, 1981. In *Yelle,* the court found in effect that the creation
of the salary increase and its implementation occurred
simultaneously. Nothing in the statute indicated otherwise.
Here the legislature deliberately specified the creation of
the office and the implementation of that creation as two
different dates. Second, there has been no intervening
action of the people as there was in the case of Initiative
282, nor can there be in the 1980 election. Const. art. 2, § 1.
Third, there is no problem of constitutionally vested rights
as in *Yelle v. Kramer, supra.* The general propositions out-
lined in *Yelle v. Kramer, supra,* are inappropriate for this
case.

The defect in the majority position may be illustrated
further: Three positions are up for election to the Supreme
Court this year. The names of the candidates will be on the
ballot. The office of Supreme Court Justice from January
12, 1981 to January 12, 1987, has been *created* (*see* Const.
art. 4, §§ 2, 3; RCW 2.04.070, 2.04.071), but the office of
Supreme Court Justice for the term 1981–87 will not be
effective until January 12, 1981, at which time the terms of

the three justices now sitting expire and those of the newly elected justices become effective. I see no distinction between this situation and that which exists in the case before us. Both *offices* have been *created,* they exist and are in being; both offices are now vacant (in *State ex rel. New Wash. Oyster Co. v. Meakim,* 34 Wn.2d 131, 208 P.2d 628 (1949), we adopted the proposition that a vacancy is a vacancy; they are not to be distinguished by how they occur (*accord, Fain v. Chapman, supra*)); both offices cannot be operative until January 1981. Both offices can and should be filled by an election in 1980. (The problem created by the legislation which designated January 1, 1981, rather than January 12, 1981, as the date when the judge would take office is dealt with effectively by the Attorney General in his opinion. Attorney General Opinion, June 20, 1980.

Given the decision in this case, the position of the majority on the veto power of the Governor (*Fain v. Chapman,* 94 Wn.2d 684, 619 P.2d 353 (1980)), and our decision in *Fain v. Chapman,* 89 Wn.2d 48, 569 P.2d 1135 (1977), it now seems to be impossible for the legislature ever to require the initial election of judges. This can hardly be what the framers of the constitution contemplated. It is certainly contrary to our views expressed most recently in *Fain v. Chapman, supra,* where we said that "the provision for election of judges set forth in our constitution is the 'prime and basic provision and precept' of that article and that the provision for filling vacancies is 'subordinate and supplementary thereto.'" *Fain,* at 55. The legislature, responding to our views expressed in *Fain v. Chapman, supra,* attempted to create the office and make the effective date of the legislation far enough before the 1980 election to allow for an orderly electoral process. In view of our repeated assertions of the primacy of electing judges over appointing them, we should adopt the interpretation of Laws of 1979, 1st Ex. Sess., ch. 202, p. 1784, which will implement the constitutional priority, not deny it.

Because of my conclusion, it is not necessary to discuss the question of the veto of section 6. Section 6 is surplusage. With it or without it, the legislature has provided for the judges to be elected.

I dissent.