Honorable Don Carlson State Senator, 49th District P. O. Box 40449 Olympia, WA 98504-0449
Dear Senator Carlson:
By letter previously acknowledged, you have requested an opinion on the following question, which we have slightly paraphrased for clarity:[1]
Does Laws of 2002, ch. 356 (Second Substitute House Bill 2403) imposeupon public four-year institutions an affirmative duty to conductcollective bargaining with exclusive bargaining representatives of theirfaculty employees, in light of the governor's veto of sections 2 and 5 ofthe bill?
 BRIEF ANSWER
Although the Governor vetoed sections 2 and 5 of Laws of 2002, ch. 356, the language of the remainder of the bill is sufficient to establish a duty for the public four-year institutions to conduct collective bargaining with their faculty employees. Therefore, we answer your question in the affirmative. Our answer is explained more fully in the analysis below.
 ANALYSIS
At its 2002 session, the Legislature enacted Laws of 2002, ch. 356, entitled "an act relating to labor relations at the public four-year institutions of higher education". The bill that passed the House of Representatives and the Senate (Second Substitute House Bill 2403) contained twenty-four sections. However, the Governor, exercising his constitutional section veto (see Const. art. III, § 12), vetoed sections 2 and 5 of the bill (approving the remainder). Your question concerns the effect of those vetoes on the duty of public four-year institutions to engage in collective bargaining with their faculty employees.
As explained in your opinion request, your concern about Laws of 2002, ch. 356 is that the only language anywhere in the original bill thatexpressly provided for mandatory collective bargaining between state public four-year institutions of higher education and their faculty members was contained in section 5, one of the two sections vetoed by the governor.[2] The veto then raises the issue whether the non-vetoed remainder of the bill contained language sufficient to establish the collective bargaining requirement.
Before turning to the details of the 2002 legislation, we review the case law concerning the effect of partial vetoes on the interpretation of legislation. In State ex rel. Stiner v. Yelle, 174 Wn. 402, 25 P.2d 91
(1933), the Washington Supreme Court had before it a challenge to the constitutionality of an act imposing a tax on the privilege of engaging in business in this state. The governor had vetoed portions of the act. As to the effect of this partial veto, the court explained:
In exercising the veto power, the Governor acts as a part of the legislative bodies and the act is to be considered now just as it would have been if the vetoed provisions had never been written into the bill at any stage of the proceedings.
Stiner, 174 Wash. at 408. In interpreting the tax bill before it, the Supreme Court thus considered the act only as it stood after the governor's veto. Later cases followed the same process. See, e.g.,Shelton Hotel Co. v. Bates, 4 Wn.2d 498, 104 P.2d 478 (1940); Hallin v.Trent, 94 Wn.2d 671, 619 P.2d 357 (1980). In each of these cases, then, the language excised by the governor simply was treated as though it had never been a part of the bill.[3]
Given these cases, we analyze Laws of 2002, ch. 356 just as if sections 2 and 5 had never been included in the bill or had been amended out at some early stage of the legislative process. We note that the surviving 22 sections of the bill (though lacking express language providing for collective bargaining) contain language unmistakably establishing that the whole intent of the bill (with or without section 5) was to provide for such bargaining. These include:
Section 1, after noting that teachers in the public school system and instructors in the community colleges have collective bargaining rights, states that "[i]t is the intent of the legislature to accomplish this purpose by providing a uniform structure for recognizing the right of faculty of the public four-year institutions of higher education to engage in collective bargaining as provided in this chapter, if they should so choose." Laws of 2002, ch. 356, § 1(3).
Section 3 defines a number of terms, including "collective bargaining" and "exclusive bargaining representative." The latter term is defined as "any employee organization that has been determined by the commission to represent all of the faculty members of the bargaining unit as required in section 6 of this act." Id., § 3(8).[4]
Section 4 defines the scope of collective bargaining — listing certain subjects as prohibited and certain others as permitted. Id., § 4.
Section 6 provides that the employee organization determined to be the exclusive bargaining representative "shall be required to represent all the faculty members within the bargaining unit without regard to membership in that employee organization". Id., § 6.
Section 12 provides that the dues and initiation fees of an employee organization which is an exclusive bargaining representative may be deducted from the salary of a bargaining unit faculty member, if the member so authorizes, and the collective bargaining agreements may include union security provisions, but not a closed shop. Id., § 12.
Section 13 defines several unfair labor practices for a higher education institution employer, including refusing "to bargain collectively with the exclusive bargaining representative of its faculty." Id., § 13(1)(e).
The remaining sections implement collective bargaining by defining the rights of the parties and the role of the public employment relations commission.
Given the language shown, we conclude that chapter 356 clearly establishes that the state's public four-year institutions of higher education have a duty to collectively bargain with their respective faculty if the faculty requests such bargaining after designation of an exclusive bargaining representative. Indeed, as section 13 of the act provides, it would be an unfair labor practice for the institution to decline to bargain in such a case. Given the clear language cited, the excision of section 5 had no effect on the basic thrust of the bill. Furthermore, if the absence of section 5's language were read as eliminating the collective bargaining requirement, the enacted remainder of the bill would have no meaning, as the entire bill relates to granting and defining the collective bargaining rights in question. The courts presume that the Legislature does not indulge in vain and useless acts, and some significant purpose or object is implicit in every legislative enactment. Spokane Cy. Health Dist. v. Brockett, 120 Wn.2d 140,839 P.2d 324 (1992); Kelleher v. Ephrata Sch. Dist. 165, 56 Wn.2d 866,355 P.2d 989 (1960). Therefore, the veto of sections 2 and 5 does not affect the basic thrust of chapter 356, and the remainder of the bill is effective to establish and define faculty collective bargaining rights for faculty at four-year institutions of higher education.
We trust the foregoing will be of assistance to you.
Sincerely,
JAMES K. PHARRIS
Senior Assistant Attorney General
[1] Your original opinion request was jointly signed by you and by Senator Dan McDonald, who completed his service in the Senate at the end of 2002 and did not seek re-election.
[2] The governor vetoed sections 2 and 5 of the bill. Both of these sections contained language which would have required faculty who participated in a faculty governance system at their institutions to choose between collective bargaining and participating in such a faculty governance system. The governor's veto message makes it clear that he vetoed these sections because he did not favor forcing faculty to make this choice. Laws of 2002, ch. 356 (veto message). Section 5 of the bill stated that "[f]aculty members have the right to self-organization, to form, join, or assist employee organizations, and to bargain collectively through exclusive bargaining representatives of their own choosing, and also have the right to refrain from any or all of these activities". Laws of 2002, ch. 356, § 5. The sentence that follows stated that "faculty members may not engage in collective bargaining until any existing faculty senate or council and any other faculty governance system has been abolished." Id.
[3] Courts will consider the contents of a governor's veto message in ascertaining the meaning of non-vetoed parts of a bill. See, e.g., NewCastle Inv. v. City of LaCenter, 98 Wash. App. 224, 989 P.2d 569
(1999).
[4] The "commission" is the public employment relations commission. Laws of 2002, ch. 356, § 3(4). Subsection (12) of this section defines the term "public four-year institutions of higher education" to include the University of Washington, Washington State University, Eastern Washington University, Western Washington University, Central Washington University, and the Evergreen State College. Laws of 2002, ch. 356, § 3(12).